Alliance Auto Service, Inc., *v.* Cohen et al.,
Appellants.

Argued April 16, 1940; reargued January 14, 1941.
Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN,
PATTERSON and PARKER, JJ.

*William A. Gray*, with him *Lester J. Schaffer*, for appellants.

*Emanuel Moss*, of *Moss & Moss*, for appellee.

OPINION BY MR. JUSTICE STERN, March 24, 1941:

Plaintiff is a corporation which sells at retail, at thirty-two service stations in Philadelphia, petroleum products, automobile accessories and certain minor commodities. Petrol Corporation, which is engaged in the business of distributing petroleum products, supplies plaintiff and other dealers. Plaintiff sells no petroleum products other than those obtained from Petrol Corporation. The latter discharged a number of its employees who were members of Highway Truck Drivers and Helpers Local 107, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, an unincorporated labor organization affiliated with the American Federation of Labor. The union, claiming that these men were dismissed because of their membership therein, instituted a strike against Petrol Corporation, and, in furtherance of its cause, placed pickets at several of plaintiff's service stations. These pickets patrolled the sidewalk carrying placards with the inscription

"Petrol
Unfair to Organized Labor
A. F. of L.—107"

The result was loss of business suffered by plaintiff and a refusal on the part of some workers connected with the American Federation of Labor to cross the picket

line and to deliver to plaintiff equipment and supplies. There were, however, no acts of violence or breaches of the peace, and there was no coercion or intimidation other than that implicit in all picketing.* Plaintiff, which had no dispute of any kind with its employees or with the union concerning terms or conditions of employment in its own business, sought, and was granted, an injunction prohibiting members of the union "from instituting or maintaining a boycott of the plaintiff company, or picketing the service station locations and places of business of the plaintiff company."

The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, provides (section 6) : "No court of this Commonwealth shall have jurisdiction or power in any case involving or growing out of a labor dispute to issue any restraining order or temporary or permanent injunction which, in specific or general terms, restrains or prohibits any person, association or corporation from doing, whether singly or in concert with others, . . . any of the following acts: . . . (e) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts or merits involved in, any labor dispute, whether by advertising, speaking or picketing or patrolling any public street or place where any person or persons may lawfully be, or by any other method not involving misrepresentation, fraud, duress, violence, breach of the peace or threat thereof. . . . (g) Persuading by any lawful means other persons to cease patronizing or contracting with or employing or leaving the employ of any person or persons. . . ."

A "labor dispute" exists between Petrol Corporation and the union, since a "labor dispute," according to section 3 (c) of the act, "includes any controversy concerning terms or conditions of employment, or concern-

---

* The chancellor made a finding that acts of the defendants "were coercive, involved duress and were unlawful," but there was no testimony to support it.

ing the association or representation of persons in negotiating, . . . or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe. . . ." The fact that the dispute of Petrol Corporation is with the union instead of directly with its own employees is, therefore, immaterial: *Senn v. Tile Layers Protective Union,* 301 U. S. 468; *Lauf v. E. G. Shinner & Co.,* 303 U. S. 323; *New Negro Alliance v. Sanitary Grocery Co.,* 303 U. S. 552.

The principal, indeed the only, question here involved is whether the present case is one "growing out of" that dispute. By section 3 (a) of the act, "A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interests therein, . . ." In seeking an interpretation of this legislation its history must be borne in mind. The Clayton Act of October 15, 1914, c. 323, § 20, 38 Stat. 738, forbade the granting of an injunction in federal courts, except under certain conditions, "in any case between an employer and employees, or between employers and employees, . . . involving, or growing out of, a dispute concerning terms or conditions of employment, . . ." This provision was held in *Duplex Printing Press Co. v. Deering,* 254 U. S. 443, to apply only to situations where the dispute was between an employer and his immediate employees. The Norris-LaGuardia Act of March 23, 1932, c. 90, 47 Stat. 70, after which the Pennsylvania Labor Anti-Injunction Act is closely patterned, was enacted for the very purpose of broadening the provision of the Clayton Act as thus construed. Both it and the Pennsylvania Act expressly include within their scope controversies not only where

the parties are interested in the same business enterprise and occupy the proximate relation of employer and employee, but also where they are merely engaged in the same *industry* or have "direct or indirect interests therein."

That plaintiff and defendants have a common interest in the petroleum products industry is obvious. It is that industry which is the source of profits for plaintiff and of wages for members of the union. There is necessarily an interdependence and interrelation between the production, selling and delivery units of every business, these being but successive stages in the conduct of an industry. Of course, as need hardly be added, the ultimate consumer of the product has no interest of the kind contemplated by the statute in the industry manufacturing or selling that product.

In *Goldfinger v. Feintuch,* 276 N. Y. 281, 11 N. E. (2d) 910, a union picketed retail stores which sold meat products made by a manufacturer with whom the union had a labor dispute. The court held that there was a unity of interest which prevented the granting of an injunction even though the New York Anti-Injunction Act did not contain the comprehensive clause of the Pennsylvania statute making it applicable to cases involving persons having "direct or indirect interests" in the same industry. There are other decisions to the same effect: *Wilson & Co. v. Birl,* 105 Fed. (2d) 948; *Fortenbury v. Superior Court,* 106 Pac. (2d) 411 (Cal.); see also *Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc.,* 311 U. S. 91.

Since the present case, therefore, is one involving or growing out of a labor dispute within the meaning of that phrase as defined in the act, and since, in that event, the courts are denied the power to issue any injunction restraining or prohibiting the publicizing or communicating of information regarding the dispute, whether by advertising, picketing or any other method not involv-

ing misrepresentation, fraud, duress, violence, breach of the peace or threat thereof, it follows that the court below was in error in issuing an injunction.

In order that there be no misconception as to the scope of this decision, it may be well to point out that the Labor Anti-Injunction Act does not declare the acts as to which it prohibits the issuing of an injunction to be either legal or illegal, but merely denies the particular remedy of injunction in certain cases and restricts it in others (see *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 318 Pa. 401, 410, 412, 178 A. 291, 295, 296); it even, in section 7 (b), makes any illegality of the ends sought to be accomplished by a party to the labor dispute immaterial as far as the impotence of the court to issue an injunction is concerned. The act, for example, does not purport to legalize a "secondary boycott." If employees, or a labor union, have a controversy with an employer, they may picket the retail outlets where the product made by that employer is sold, in order to induce consumers not to purchase it. Indeed, to the extent to which they merely publicize, by true and fair statements, the facts of a labor dispute, they are within the protection given to freedom of speech by Article I, section 7, of the State Constitution and the 14th Amendment to the Federal Constitution: *Kirmse v. Adler,* 311 Pa. 78, 85, 89, 166 A. 566, 569, 570; *Thornhill v. State of Alabama,* 310 U. S. 88, 101, 102, 103; *Carlson v. People of State of California,* 310 U. S. 106, 112, 113; *American Federation of Labor v. Swing,* 310 U. S. 620. It is, however, a far cry from such a right to that of advertising that the retailer *himself* is "unfair" to labor, or urging the public not to purchase *other* merchandise from him, or attempting to quarantine him in the general pursuit of his business. As to products other than the one obtained from the manufacturer or dealer with whom the labor dispute exists, there is lacking that unity of interest in the same industry upon which the application of the Labor Anti-Injunc-

tion Act depends. This distinction was pointed out in *Goldfinger v. Feintuch,* 276 N. Y. 281, 11 N. E. 2d 910, and apparently it was held in *Canepa v. Doe,* 277 N. Y. 52, 12 N. E. 2d 790, that, notwithstanding the act, an injunction might be granted against a "true" secondary boycott. See Restatement, Torts, vol. 4, § 799, comment on clause (a).

The decree is reversed at appellee's cost.

CONCURRING OPINION BY MR. CHIEF JUSTICE SCHAFFER:

We are bound to follow the decision of the Supreme Court of the United States in *American Federation of Labor v. Swing,* 310 U. S. 620, and for that reason I concur in the reversal of the decree.