Dominic Maurer, Inc., v. Berks Products Corp.
et al. No. 2

*Mark C. McQuillen,* for plaintiff.

*Edward Davis* and *Albert S. Readinger,* for defendants Building Trades & Construction Council of Reading et al.

*John A. Moss,* for defendants Berks Sales Corporation et al.

*George A. Kershner,* for defendants Ready Mixed Concrete Co.

*George Eves,* for intervenors.

SHANAMAN, J., April 16, 1945.—

### Pleadings and issue

The pleadings are: (1) Bill in equity (as amended), alleging a conspiracy to interfere with the usual operation and conduct of plaintiff company's business, and praying that the alleged unlawful combination be restrained, and (2) answers by the several conspirators denying alleged conspiracy.

The issues are (1) Whether or not defendant labor organizations, their officers and members, have unlawfully conspired and agreed with respective defendant business organizations to coerce plaintiff company, by unlawful means, into unionizing its business, and in

particular by means of defendant business concerns' respectively refusing to accept plaintiff company's orders for materials.

## Findings of fact

1. Plaintiff corporation, Dominic Maurer, Inc., has been in the general contracting business in Reading and vicinity since 1934, during which time it has earned a valuable reputation as a first class contracting firm for both the type of work it has performed and its financial standing among its business associates.

2. Plaintiff employs about 28 persons.

3. Defendant, Building Trades and Construction Council of Reading and vicinity, is an unincorporated association, composed of a group of trade unions organized for the purpose of bettering themselves as to wages, hours and working conditions, and consists of delegates from 17 trade crafts, who constitute the council.

4. Defendant, William J. Focht, is secretary of the Building Trades and Construction Council of Reading and vicinity.

5. Defendant, Brick Layers, Masons, and Tile Setters International Union No. 21, is an unincorporated association, or trade union, composed of members employed in the building trades.

6. Defendant, Javan E. DeLong, is the secretary and is a representative of the defendant, Brick Layers, Masons, and Tile Setters International Union No. 21.

7. Defendant, International Hod Carriers Building and Common Laborers Union of America Local 471, is an unincorporated association or trade union, composed primarily of common laborers.

8. Defendant, Wesley Burgess, is the business agent and representative member of the International Hod Carriers Building and Common Laborers Union of America Local 471.

9. Defendant, Carpenters' Union Local 492, is an unincorporated association or trade union, composed primarily of carpenters.

10. Defendant, Lindsay E. Ross, is a business agent and representative of defendant, Carpenters' Union Local 492.

11. Defendant, Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429, is an unincorporated association or trade union, composed of teamsters, chauffeurs, warehousemen and helpers.

12. Defendant, Harry E. Mack, is a business agent and representative of the Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429.

13. Since 1934 there have never been any labor troubles or disputes between plaintiff, Dominic Maurer, Inc., and its employes, many of whom have been employed by the said plaintiff since its organization.

14. During the foregoing time many efforts have been made by defendant labor unions and their associates to induce employes of plaintiff, Dominic Maurer, Inc., to join defendants' unions; these efforts have been by word of mouth, persuasion, by picketing, by intimidation, and by acts of violence. Said intimidation and acts of violence, however, are not recent, and are not the specific object of any of the prayers of plaintiff company's bill.

15. Said employes have, however, persistently refused and still refuse to join or become associated with any of defendant labor unions or other labor unions.

16. The business agents of defendants have approached plaintiff and sought to persuade its president to execute a closed shop agreement with the unions.

17. Plaintiff has consistently declined to enter into closed shop agreements with the unions to employ only union help, unless its employes should desire that it do so.

18. Plaintiff company has afforded a reasonable opportunity for the unions to approach and convince its employes that they should join a union.

19. Plaintiff company has consistently refused to compel its employes to join any labor union, but has never refused them permission to join a labor union. Plaintiff company has refused and still refuses to enter into any agreement which would require plaintiff company to hire only union workmen, and to discharge its present employes if they should exercise their right not to join a union.

20. None of the employes of plaintiff, Dominic Maurer, Inc., are members of any trades or labor unions.

21. Berks Products Corporation and Berks Sales Corporation, two of defendants, are engaged in and around Reading in selling and buying building materials.

22. Ready Mixed Concrete Company of Reading, one of defendants, is engaged in the manufacture and sale of ready mixed concrete in and about Reading and Berks County.

23. Defendant, Ready Mixed Concrete Company of Reading, has a closed shop agreement with the Brotherhood of Teamsters, Chauffeurs and Helpers, Local Union 429, with respect to the drivers of its trucks, which agreement, though by its terms it has expired, has been continued in effect pending negotiations for a new agreement.

24. Defendant, Ready Mixed Concrete Company of Reading, ceased selling ready-mixed concrete to plaintiff, Dominic Maurer, Inc., after it had been notified by the Brotherhood of Teamsters, Chauffeurs and Helpers, Local Union 429, that its drivers would refuse to deliver its products to Dominic Maurer, Inc.

25. The nature of the product of Ready Mixed Concrete Company of Reading is such that after it is placed in the special type truck used for the delivery thereof and remains undelivered, it will within 2½ hours harden and become useless.

26. Such an outcome would result in a loss to Ready Mixed Concrete Company of Reading.

27. Defendant, Ready Mixed Concrete Company of Reading, was not a party to any agreement, conspiracy, confederation, association or combination whatsoever, with any of other defendants in the above-entitled proceeding, with respect to any matter or thing relating to Dominic Maurer, Inc.

28. Berks Products Corporation and Berks Sales Corporation have closed shop contracts with the Teamsters Union with reference to the drivers of their trucks.

29. The only reason for the failure of Berks Products Corporation and Berks Sales Corporation to deliver building supplies to plaintiff company, was and is that the Teamsters Union notified these defendants that the employes of these defendants, members of the Teamsters Union, would refuse to deliver goods to plaintiff company.

30. These defendants did not enter into any conspiracy to injure the plaintiff's business (Business firms named in F. of F. 29.)

31. Plaintiff company, although it dealt, as a customer, with the Berks Products Corporation, the Ready Mixed Concrete Company of Reading, and the Berks Sales Corporation, had no contract with any of these business firms, nor any agreement obligating them or any of them to sell and deliver materials to it, but dealt with them only upon orders from time to time given and accepted.

32. The closed shop agreements of Berks Products Corporation and Berks Sales Corporation provide that their employes were not bound to haul goods to or for any one who had labor trouble.

33. The closed shop agreement of Ready Mixed Concrete Company had no such clause.

34. Since 1934 up until August 14, 1944, said plaintiff, Dominic Maurer, Inc., has purchased all its ready-

mixed concrete from the defendant, Ready Mixed Concrete Company of Reading; all its cinder and cement blocks from Berks Sales Corporation or its predecessor; and approximately 85 percent or 90 percent of its general building supplies and materials from Berks Products Corporation.

35. By reason of the satisfactory business dealings between the aforesaid, plaintiff, Dominic Maurer, Inc., had come to rely entirely upon aforesaid defendants for its building supplies and materials for the conduct and operation of its business.

36. The said Ready Mixed Concrete Company of Reading is the sole and exclusive manufacturer and seller of ready-mixed concrete in the Reading area, and the said Berks Sales Corporation is the sole and exclusive manufacturer and seller of building blocks made of cinder and cement, in the Reading area, there being no other source of similar supplies available within 18 miles of Reading.

37. It is not economically practicable for said plaintiff, Dominic Maurer, Inc., or others engaged in the general contracting business in the Reading area, to purchase and have delivered from outside sources the necessary ready-mixed concrete and the cement-and-cinder blocks.

38. It is not physically practicable to transport and deliver ready-mixed concrete to a further distance than 10 miles from the source of its manufacture, for the reason that the chemical action of the concrete does not permit a period of more than 1½ to 2 hours to elapse from the time the concrete is poured into the revolving tank until it is delivered.

39. Defendant, Building Trades and Construction Council of Reading and vicinity, has established certain labor standards in the Reading area, and has a list of contractors who have agreements with affiliate members of the council, who are referred to as "fair con-

tractors", and those who do not have such contracts, who are referred to as "unfair contractors".

40. Plaintiff has been on the unfair list since February 1, 1941, of the Building Trades and Construction Council of Reading and vicinity.

41. There have been labor disputes between plaintiff and defendant unions for a period of years prior to and including the approximate time when the bill of complaint was filed.

42. Sometime in July 1944 representatives of defendant unions picketed a job on which plaintiff was working, and pickets carried signs "unfair to organized labor".

43. Plaintiff employs the same types of employes and the same type of craftsmen as do the other general contractors with whom defendant unions have collective bargaining agreements.

44. Plaintiff employs truck drivers who would be eligible for membership in the Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429.

45. Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429 has been affiliated with the Building Trades and Construction Council of Reading and vicinity for approximately ten years, having contracts with the same general contractors, and their members work on construction jobs and deliver materials to and from construction jobs, where the contractors have collective bargaining contracts with affiliate members of the Building Trades and Construction Council of Reading and vicinity.

46. On or about July 17, 1944, a meeting was held with plaintiff and representatives of defendant unions concerning the employment by plaintiff of union men.

47. The minutes of Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429 of August 5, 1944, read as follows:

"From minutes of board meeting held August 5, 1944.

"It was reported by Harry E. Mack that the Building Trades Council put Dominic Maurer, Inc., on the unfair list, because of their office using nonunion building tradesmen in their employment.

"It was moved and seconded by the board that we notify all companies with contracts with the teamsters union that the teamsters union will not deliver any material to Dominic Maurer, Inc., after August 14, 1944, as long as the Building Trades Council keeps said company on the unfair list.

"Motion carried."

48. On or about August 6, 1944, defendants, excepting the business-firms defendants, did combine and agree between and among themselves to prevent said plaintiff, Dominic Maurer, Inc., from receiving its necessary building supplies and materials as heretofore from said defendants, Berks Products Corporation, Ready Mixed Concrete Company of Reading, and Berks Sales Corporation.

49. Upon notice given to Berks Products Corporation, Ready Mixed Concrete Company of Reading, and Berks Sales Corporation by the Business Agent of Brotherhood of Teamsters, Chauffeurs and Helpers Union 429, that members of Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429 would cease to deliver to plaintiff, who was pronounced unfair, Berks Products Corporation, Ready Mixed Concrete Company of Reading, and Berks Sales Corporation decided to cease dealing with plaintiff, rather than risk labor trouble in their own business.

50. No violence was taking place at the time the bill of complaint was filed, or was threatened, or was likely to occur.

51. No agreement existed among the Berks Products Corporation, Ready Mixed Concrete Company of Reading, and Berks Sales Corporation with respect to selling or not selling goods to the plaintiff.

52. Since August 14, 1944, Berks Products Corporation, Berks Sales Corporation and Ready Mixed Concrete Company of Reading have refused and failed to sell and deliver as theretofore, building supplies and materials necessary for the conduct and operation of the business of plaintiff company, Dominic Maurer, Inc., although said defendants have continued to sell and supply other nonunion contractors.

53. Said defendants, Berks Products Corporation, Berks Sales Corporation, and Ready Mixed Concrete Company of Reading, for their refusal to continue to accept and make sales and deliveries of their products to plaintiff, Dominic Maurer, Inc., as heretofore, gave as their sole reason that they had been requested so to do by the Brotherhood of Teamsters, Chauffeurs and Helpers Local Union, 429, which was acting in furthering the action of said defendant, Building Trades Council of Reading.

54. The purpose of the unions was to exert upon plaintiff company sufficient economic force or business pressure to induce it to unionize its business; that is, to induce it to enter into union shop agreements with the interested unions, whereby it would agree to hire none but union workmen or workmen who would join the union of their trade.

55. If said plaintiff, Dominic Maurer, Inc., will now sign an agreement with respective defendant trade unions to hire none but union workmen, the ban previously instituted against it by said defendants to prevent it from buying and receiving necessary building supplies and materials to carry on its business, will be lifted and removed.

56. If said plaintiff company refuses to sign a union shop agreement, the ban will remain in force.

57. Said plaintiff company is very greatly hampered, inconvenienced and disadvantaged in undertaking, bidding upon or fulfilling contracts for building operations, by reason of its inability to obtain deliveries of

materials from the several business firms, defendants above referred to, namely, Ready Mixed Concrete Company of Reading, Berks Products Corporation and Berks Sales Corporation.

58. Plaintiff has suffered considerable and substantial loss and damage thereby and is threatened with a continuation of the said difficulty, inconvenience, competitive disadvantage and substantial loss.

## Discussion

The chancellor, after hearing testimony upon the prayer for a preliminary injunction, handed down on October 6, 1944, a decision and an opinion on that issue: 52 D. & C. 470. Answers having been filed, a final hearing was held at which additional testimony was taken. By agreement of counsel, testimony taken at the preliminary hearing may be considered as taken upon final hearing. Argument has been had upon the issues presented by the bill (amended) and answers. In order to avoid duplication of the reasonings and authorities set forth in the chancellor's former opinion, the chancellor will repeat as few as possible of those reasoning and authorities. He does not, however, depart from them, since the additional testimony taken at the final hearing does not materially alter the aspect of the case as presented by the testimony taken at the preliminary hearing.

Defendant unionists are bringing pressure on plaintiff company to unionize its business. They have the right by lawful means to seek to unionize plaintiff company's business. If the means are lawful, defendant unionists are not liable to injunction, even though plaintiff company, preferring not to unionize, might yield to defendants only in order to choose the better of two supposed evils. If defendants' means are lawful, defendants are equally impervious to legal attack from the side of plaintiff company's employes, even though the unionization of plaintiff's business would entail

that plaintiff's employes must, against their will, join the union, if they wish to stay employed by plaintiff company. The legality of labor unions and of their general purpose to improve the condition of workers of a certain rank by obtaining from the employers contracts of employment deemed beneficial to such workers, is well established. The legality of any special objectives such as the unionizing of a particular shop, firm, business or industry, is likewise indisputable. If a successful effort of the union be in some respects regarded as hurtful to employer or employe, or to some employers or some employes, or even conceivably to the public at large, such hurt or harm does not in general operate to illegalize the union activities: Purvis v. Local 500 United Brotherhood of Carpenters and Joiners et al., 214 Pa. 348; in so saying we do not speak of exceptional situations, or declare that the principle is of universal application. Plaintiff's complaint therefore must be directed not at the purpose to unionize, nor at the effects of accomplished unionization. The real question here is the legality of the means employed by the unions. The means whereby defendant unionists have sought and are still seeking to attain their end, must be closely examined, for if they exceed the permission of the law, plaintiffs are entitled to have them abated. Purvis v. Local 500 United Brotherhood of Carpenters and Joiners et al., 214 Pa. 348.

In the chancellor's former opinion he said (p. 473):

"The gist of the case is simply: Is it unlawful for the members of a trade union, none of whom is employed by a certain nonunion shop in their locality, to attempt to accomplish their object of unionizing that shop, the employes of which do not wish to organize, by going to their own employers with whom they have closed shop contracts, and in accordance with the terms of such contracts refusing their aid to such employers in any dealings with the nonunion shop?"

After careful reconsideration of the facts, the chancellor is still of opinion that his question fairly states the case and the issue.

The chancellor has not been induced by the able argument of counsel to pronounce that such course of conduct under such circumstances violates the existing law governing labor relations. Plaintiff company cites Erdman v. Mitchell, 207 Pa. 79, and Purvis v. Local No. 500, United Brotherhood of Carpenters and Joiners et al., 214 Pa. 348. Although these cases are not precisely on all fours as to their facts with the present case, their language strongly and clearly supports plaintiff company's view of the law, but must be taken to have been impliedly overruled or their doctrine greatly modified by such later decisions as Alliance Auto Service, Inc., v. Cohen et al., 341 Pa. 283, and Friedman v. Blumberg et al., 342 Pa. 387. In the Alliance Auto Service case, defendants, a union of teamsters, having a labor dispute with Petrol Corporation, a wholesale oil dealer, picketed plaintiff with whom they had no dispute, but who sold at retail the products of Petrol Corporation. The pickets bore "unfair" placards. The Supreme Court reversed a decree of injunction. In the Friedman case, plaintiff, a glazier, did his own work aided by his wife. Occasionally, possibly a day or two a month, he called in a helper. Defendants, a labor union, picketed his place of business with written signs bearing the statement that he was unfair to organized labor. There was no testimony that either plaintiff's wife or his occasional helper had any labor dispute with him. The Supreme Court, on appeal by defendant labor organization, reversed a decree of injunction. The court said they were "constrained to hold in view of the decisions of the Supreme Court of the United States . . . that, under the circumstances here shown, an injunction to restrain the picketing cannot be sustained".

"The interdependence of economic interest of all engaged in the same industry has become a commonplace. [Cases.] The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ": American Federation of Labor et al. v. Swing et al., 312 U. S. 321, 326, 85 Law Ed. 855, 61 Supreme Ct. 568, per Frankfurter, J.

The common-law or traditional doctrine of boycott, which adequately protected the individual against intentional injury by a group's interference with this public patronage, though in the exercise of rights enjoyed severally by the group's members, has been modified by the creation of a huge excepted class, namely, an organized body of tradesmen or artificers who seek to improve their condition under lawful limitations. In short, some forms of boycott have come to be regarded as lawful, if instituted during a labor dispute by a labor union, whose members have a substantial interest in the third party's labor relations, for the purpose of accomplishing a lawful object of the union involved in such dispute, and if unaccompanied by special circumstances of violence, outrage or oppression.

"Employes who in concert refuse to work on or handle goods produced by, or destined for, or to be furnished on behalf of, a third person whose employes are not members of a labor union satisfactory to the actors or are engaged in a labor dispute with him for a proper object are not liable to the employer or to the third person if the actors have a substantial interest in the third person's employment relations": A. L. I. Restatement of the Law, Torts, vol. IV, chap. 38, sec. 802.

Do the defendant unions have a substantial interest in the labor relations of Dominic Maurer, Inc., and its employes?

"In determining whether the actors have a substantial interest under the rules stated in §§802 and 803, the following are important factors:

"(*a*) The similarity of the occupation, trade, or craft of the actors and of the employes of the third person; (*b*) the relation between the actors and the employes of the third person with respect to the industry in which they are employed; (*c*) the relations between the actors' employer and the third person with respect to competition, bargaining, financial interest or influence in employment policies; (*d*) the size and integration of the community in which both the actors and the employes of the third person work; (*e*) the form of labor union in which the employes are organized; (*f*) the competition between the labor union of the actors and that of the employes of the third person": A. L. I. Restatement of Law, Torts, vol. IV, chap. 38, sec. 804.

It is true that none of defendants is employed by plaintiff company. Defendant unionists, however, represent types of labor which are employed by plaintiff company.

Applying the stated tests serially to the present situation, we make the following observations: As to clause (*a*), the occupations, trades, or crafts of defendant unionists are similar to those of plaintiff company's employes. Defendant unionists may at sometime, therefore, desire employment with plaintiff or may fall under a form of economic pressure such as the loss of their present jobs, which would induce them to seek employment with plaintiff company. As to clause (*b*), the relation between plaintiff's employes and the unionists, excepting, presumably, their business agents, is that they stand alike in the class of employes and at least some are in the same building industry. A mutual interest therefore appears. In regard to clause (*c*), it is definitely shown that there are 10 or 12 general contractors in the City of Reading, comparable in size and volume of business with plaintiff company; and that these, except plaintiff company, are all unionized. It is shown also that plaintiff and the other contractors are competitors. This fact is supported further

by the testimony of plaintiff's president, as to the effect of the ban upon its business. When two employers are competitors, the employes of each are interested in the employment policies of the other, particularly where the labor costs are dominant elements in the price of employer's product. In regard to clause (d), the community constituted by Reading and vicinity is not of great extent in population. Reading is a city of about 110,000 population. Berks County, including Reading, has about 242,000. The chancellor must conclude that defendant unionists have shown by the fair weight of the evidence that they have a substantial interest in the employment relations which exist between plaintiff company and its employes.

Is there a labor dispute? There is none between plaintiff company and its employes. However, one obviously exists between plaintiff company and defendant unionists. This dispute lies not between it and the men it presently uses, but between it and the men who do the same type of work for its competitors, and who may conceivably seek to work for it, and whose economic situation may be indirectly but effectively worsened by the character of the terms of employment which subsist between plaintiff and its employes.

"The term 'labor dispute' includes any controversy concerning—(1) terms, tenure or conditions of employment; or concerning (2) the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employe": Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, sec. 3; Act of June 9, 1939, P. L. 293, sec. 1, 43 PS §211.3, par. (h).

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking

to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer": Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, sec. 3, 43 PS §206(c).

Does the existence of a labor dispute coupled with the substantial interest of defendant unionists furnish legal warrant for what they have done? In determining this question we do not regard it as important to determine whether the prime mover was the building trades council, composed of the local building trades unions and delegates from such unions, or whether the prime mover was the teamsters union, or whether the prime movers were such members from the several unions as felt themselves aggrieved. The unions are associations and are instruments of their members for the purposes stated in their constitutions. The trades council is an association of the local unions, and is their instrument for the purpose stated in its constitution. By affiliating with it a union gives over to it great power and "full authority over all matters affecting all workmen engaged in said industry". Constitution, sec. 2. Nevertheless, the union, if dissatisfied, may disaffiliate, and in fact the carpenters union has never affiliated. Plaintiff company had been on the council's unfair list for a number of years, at least since February 1941, at which time a letter was sent by the council to all affiliated local unions, notifying them of the action taken and bidding the locals notify their members and take the proper action on the matter. From the testimony we gather that periods of greater or less activity in attempting to induce plaintiff company to unionize, culminated in 1944 in a renewed discussion among some of the members of the affected trades, and at the

meeting of the trades council, some action was taken of which the component unions were apprised, and in accordance with which the teamsters local took the action stated in finding of fact no. 50. The chancellor has scanned closely the circumstances and conversations attending the formation, adoption and execution of the plan, so far as they appear in evidence. The step was not hastily taken. Several years had elapsed since plaintiff company had been put on the unfair list. We find no evidence of special ill will or spite; some hardness, perhaps, but no malice: Findings of fact nos. 54, 55, 56. The council and the unions had in effect the same membership and had the same general interest. In what order they coöperated is not important. Nor is the fact that other nonunion contractors had not been proceeded against in the same way up to this time, decisive or controlling. The evidence is that plaintiff company alone, among contractors of comparable size and importance in the City of Reading, has not been unionized. Those authorities cited by plaintiff company, in which the singling out of one among a number of nonunion shops for unionization has sometimes been deemed to militate against the legality of the union's action, are for the reason stated not apposite in the present case. "Labor bargains are not all made at once": A. L. I. Restatement of the Law, Torts, vol. IV, chap. 38, p. 120.

While the action complained of by plaintiff company is a form of boycott, the authorities above and in our previous opinion cited or discussed show that it is not necessarily illegal. We point out, of course, that defendant business firms affected have not complained. An additional factor, discussed in our previous opinion, is that the unionist defendants have, as far as the record shows, brought the pressure of united group action only upon such business firms that might sell materials to plaintiff company, as are bound to defendant unionists by union shop agreements. We do not therefore, have

before us for decision a case in which the defendant unionists would in some manner boycott a building material firm with whom they had no contract in order to prevent such firm from supplying plaintiff company with materials. In the present case unionist defendants appear to be simply working with the business firm defendants, who are their employers, along lines of action contemplated by their closed-shop agreements with them, and in fact particularly expressed in two of their contracts. In the contract of the third, the Ready Mixed Concrete Company of Reading, with its teamster employes, no specific clause reserving to them the right not to deliver to persons having labor trouble appears. Nevertheless, the action taken appears to have been implied or contemplated by the parties involved, since the Ready Mixed Concrete Company of Reading did not avail itself of its right to arbitrate under its contract with the teamsters local. A boycott may be illegal because of special circumstances of coercion. Teller on Labor Disputes and Collective Bargaining, vol. 1, sec. 151. The evidence goes no further than that the Berks Products Corporation was notified that picketing would follow any attempt to deliver in breach of the closed shop agreement. But questions as to alleged coercion of firm-defendants, whether by the form of the notice to them, or by an implied threat of a strike by their employes, or by the knowledge of defendant-firms of the probability of a strike even though none were threatened, all sink into relative unimportance because of the closed-shop contracts which the business firms had executed. The union has simply gone to its close co-parties in the closed-shop agreements, to wit, the employers, and has upon them exerted influence contemplated by and accordant with these agreements.

Concerning the charge that the business-firm defendants have conspired to injure plaintiff company, nothing, we think, would be gained by a repetition of the discussion contained in our former opinion.

The chancellor is of the opinion that the parties should each pay their several costs. The reason for this opinion is that all parties are interested in a determination of their respective rights. All are in the same general industry. All deal with each other or may deal with each other. Plaintiff company and intervening plaintiffs have acted in good faith, and should not under the circumstances be saddled with more than their own costs.

## Conclusions of law

1. Plaintiff has not established the averment contained in its bill of complaint that defendants and their agents, servants, workmen, employes, and associates, have coerced, intimidated and threatened the employes of plaintiff into joining or becoming members of the various trade unions covering the trade in which they were engaged, or that there have been crimes of violence and disturbances of the peace, committed at such times as to be relevant to the issue.

2. Plaintiff herein has no legal contract with the Berks Products Corporation, Ready Mixed Concrete Company of Reading, and Berks Sales Corporation, or any of them, whereby the said companies have agreed to sell or plaintiff has agreed to purchase the goods of said companies.

3. It is not a violation of the existing laws governing labor relations, if the members of a trade union, none of whom are employed by plaintiff company, attempt to accomplish its unionization by going to their own employers, with whom they have closed-shop contracts, and, in accordance with the terms of such contracts, refusing their aid to such employers in delivering materials to plaintiff company.

4. The evidence is not sufficient to establish the existence of a conspiracy.

5. When a conspiracy is alleged, it must be proved by full, clear, and satisfactory evidence, such as to

warrant the belief that the acts were done in furtherance of an unlawful combination.

6. The evidence is not sufficient to support a conclusion that business firms schemed and contrived a course of action with defendant, Harry E. Mack, or with defendant, Brotherhood of Teamsters, Chauffeurs, and Helpers Local Union 429.

7. Defendant unions and their representatives have a substantial interest in plaintiff company's employment relations, and the refusal of the Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429 to handle goods destined to plaintiff does not, under the circumstances of the present case, create a legal liability.

8. Similarity exists between the occupation of the teamsters, members of the Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429, and some of plaintiff's employes.

9. Similarity exists between the occupations of many of plaintiff's employes and the various affiliate members of the Building Trades and Construction Council of Reading and vicinity.

10. To obtain employment for union men is a lawful objective for their unions.

11. The closed-shop contracts between the Brotherhood of Teamsters, Chauffeurs and Helpers Local Union 429 and defendant employers have neither been contended nor shown to violate the existing law governing them.

12. As to Berks Products Corporation, Berks Sales Corporation, and Ready Mixed Concrete Company of Reading, the evidence does not establish any conspiracy to injure or destroy plaintiff company's business.

13. Defendants mentioned in conclusions of law no. 12, are, as far as the evidence shows, in general free to refuse the sale of their products to whomsoever they please, and accordingly are not liable to injunction in the present action, ordering them to sell to plaintiff company against their will.

14. Plaintiffs' bill in equity should be dismissed.

15. The several parties shall pay their respective costs.

And now, to wit, April 16, 1945, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record.