## SKF Industries, Inc., v. Local No. 2898 United Steelworkers of America et al.

*Bell, Murdock, Paxson & Dilworth,* for plaintiff.
*M. H. Goldstein,* for defendants.

SMITH, P. J., November 29, 1945.—The SKF Industries, Inc., a Delaware corporation, registered to do business in the Commonwealth of Pennsylvania and having manufacturing plants no. 1 at Front Street and Erie Avenue and no. 2 at Kennedy and Tulip

Streets in the City of Philadelphia, where they manufacture and sell ball and roller bearings, are engaged in a labor dispute with Local No. 2898, United Steel Workers of America, Congress for Industrial Organizations, an unincorporated association which is composed of wage employes of the SKF Industries, Incorporated, and individuals Stephen Root, president of said local; Joseph P. Cannon, vice president; Gerald P. Kennedy, financial secretary; Helen Hawes, treasurer; George Hart, recording secretary; L. Barth, chairman of grievance committee, and Bernard Lehman, secretary of grievance committee, all officers of the said local. As the result of said labor dispute, the wage employes of the SKF Industries, Inc., all members of the said local, have discontinued their work and have gone on a strike. Plaintiff, SKF Industries, Inc., has filed in this court sitting in chancery, a bill in equity, asking for an injunction preliminary until final hearing and perpetual thereafter to restrain and enjoin defendants individually and as representatives of the members of Local Union No. 2898, United Steel Workers of America, C. I. O., their servants, agents, employes and/or any other person acting on behalf of them or any of them, from aiding, abetting, encouraging, ordering or assisting in any way any work stoppage at plaintiff's plants by means of violence, and from any interference by means of mass picketing with the operation of plaintiff's office and factories, and from coercing or intimidating by threats and violence, plaintiff's employes and other persons having lawful business upon plaintiff's premises and from entering plaintiff's premises.

## Findings of fact

1. The SKF Industries, Inc., a Delaware corporation, registered to do business in the State of Pennsylvania, has manufacturing plants at Front Street and Erie Avenue, being plant no. 1; Tulip and Kennedy

Streets, being plant no. 2, and Fourth Street and Glenwood Avenue, all in the City of Philadelphia.

2. Stephen Root, Joseph P. Cannon, Gerald P. Kennedy, Helen Hawes, George Hart, L. Barth and Bernard Lehman are officers and members of Local No. 2898, United Steel Workers of America, C. I. O.

3. The SKF Industries, Inc., and Local No. 2898, United Steel Workers of America, C. I. O., and the individuals, Stephen Root, Joseph P. Cannon, Gerald P. Kennedy, Helen Hawes, George Hart, L. Barth and Bernard Lehman, are engaged in a labor dispute.

4. Said defendants individually and as representatives of the members of the Local No. 2898, their fellow members, as a result of the said labor dispute, have caused to assemble around and about the entrances of the said plants nos. 1 and 2 of plaintiff, large groups of men so congregating as to prevent the orderly entrance of plaintiff's other employes, officers of plaintiff company, and other persons having lawful business upon plaintiff's premises.

5. Said defendants, their said servants, agents and employes and other persons acting on behalf of them or any of them, are engaged in mass picketing around and about the plants of said plaintiff.

6. By their large numbers they are coercing and intimidating the officers of plaintiff company, plaintiff's employes and other persons having lawful business upon plaintiff's premises, from entering and leaving said premises.

## Discussion

The question here involved is not whether there is a labor dispute. It may be conceded that there is. The proposition which confronts us is whether the court of equity may restrain mass picketing and acts of intimidation, coercion, threats and violence if indulged in by defendants while the labor dispute exists. It is the opinion of this court that the Labor Anti-Injunction

Act of June 2, 1937, P. L. 1198, is not controlling in this type of case and does not take it out of the jurisdicton of the courts of equity as vested by the Act of June 16, 1836, P. L. 784, sec. 13, and the Act of February 14, 1857, P. L. 39, insofar as they relate, inter alia, to the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals. As was said by Mr. Justice Stern in Main Cleaners & Dyers, Inc., v. Columbia Super Cleaners, Inc., et al., 332 Pa. 71, 75 (1938):

"There is thus established a *general class* of cases in which the court is vested with jurisdicton to grant injunctive relief. The fact that a labor dispute may be involved does not take the litigaton out of this jurisdictional class. All that the Act of June 2, 1937, P. L. 1198, in effect provides is that, in any case involving or growing out of a labor dispute, the court shall not have the power to issue injunctions to prohibit the particular acts specified in sections 6 and 7."

A reading of section 6 shows clearly the intention of the legislature by the qualifying words "peaceably", "lawful" and "not involving misrepresentation, fraud, duress, violence, breach of the peace", etc. The legislature shows the specific intent to prohibit injunctions from restraining peaceful picketing of an employer's plant. "The modern trend of judicial decisions clearly indicates that the right to picket peacefully and truthfully is one of organized labor's lawful means of advertising its grievances to the public.": Reed's Law of Labor Relations, p. 271.

In discussing the Clayton Act which has been followed in many of the various States having anti-injunction legislation, Bourquin, J., in Great Northern Railway Co. v. Local Great Falls Lodge of International Association of Machinists, No. 287, et al., 283 Fed. 557, 562, said:

"The principal thing is that workmen conscientiously heed the mandate of the law and its instruments (the courts) that threats and force and their intimidation must not be used to promote success in strikes, and that of necessity, theirs as well as others, such methods always have been and always will be under the ban and criminal."

In Truax et al. v. Corrigan et al., 257 U. S. 312, Mr. Chief Justice Taft, in considering an anti-injunction act of Arizona, which prohibited the court from enjoining peaceful picketing said (p. 327) :

"Plaintiff's business is a property right (Duplex Printing Press Co. v. Deering, 254 U. S. 443, 465) and free access for employes, owner and customers to his place of business is incident to such right. Intentional injury caused to either right or both by a conspiracy is a tort."

The question considered was whether the means used were unlawful. As was said by Chief Justice Taft (p. 332) :

"Our whole system of law is predicated on the general, fundamental principle of equality of application of the law. 'All men are equal before the law', 'This is a government of laws and not of men', 'No man is above the law', are all maxims showing the spirit in which legislatures, executives and courts are expected to make, execute and apply laws."

The legal right of workmen to combine and strike in order to secure for themselves higher wages, shorter hours and better working conditions is recognized under our laws. But the matter of how the strike may be conducted, the kind of pressure that may be exerted to induce the employer to yield, is quite another matter. Peaceful picketing is lawful. But where mass picketing is indulged in, employes are intimidated and coerced, owners are prevented by these means from entering their plants, it is a far cry from peaceable picketing. These acts are unlawful and should be re-

strained by injunctive relief. Our courts have always said, "Picketing, if peaceful and unaccompanied by coercion, duress or intimidation, is lawful."

In 32 C. J. §262, it is said:

". . . an injunction may be granted to restrain picketing if it is accompanied by force, violence, threats, physical assault, abusive and insulting language, coercion, or intimidation, designed to prevent workmen from continuing in or accepting employment with the person against whom the acts are designed to operate. . . . Picketing accompanied by any one of the acts under consideration is unlawful and will be enjoined."

Intimidation is not limited to threats of violence or of physical injury; it has a broader significance, and there may be a moral intimidation which is illegal: O'Neil v. Behanna et al., 182 Pa. 236.

It has been suggested that the pickets of defendants have been supplemented and added to by union members employed at other places of employment. As was said in American Engineering Co. v. International Moulders Union Local No. 15 et al., 25 Dist R. 564, 567:

"Whether they were strikers or sympathizers or persons simply desiring to give play to their vicious feelings is immaterial, in view of the fact that the result was to intimidate workmen from entering or remaining in plaintiff's employ and thereby injuring its property rights."

In Jefferson & Indiana Coal Co. v. Marks et al., 287 Pa. 171, 176, Mr. Justice Kephart said:

"Such acts as hostile assemblages, marches, parades or acts of individuals, separately, collectively in combinations, or under a system, which annoy or embarrass, intimidate or terrify those who desire to work, have more potency over men of ordinary nerve than actual violence, and are unlawful: O'Neil v. Behanna, 182 Pa. 236. A court of equity will intervene to protect

persons and property by restraining such acts, threatened, done or likely to be done."

In the case of Goldfield Consolidated Mines Co. v. Goldfield Miners Union No. 220 et al., 159 Fed. 500, it is said:

"It is idle to talk of 30 to 75 pickets, and at times more than 100, gathering twice a day at the crossing for friendly solicitation. . . . The picketing, designed by the instructions, was designed and intended to inspire fear and apprehension among the employes."

We do not see how any reasonable person, whether he be a member of a union or not, can condone the prevention of an office force specifically excluded by the terms of its contract from the union, as well as the officers of the company, of the right of free ingress to and egress from the plaintiff's place of business. In Labor Disputes and Collective Bargaining, Vol. 1, §127 (Ludwig Teller), it is written (p. 397):

" 'Unions which authorize a strike and picketing are under a legal responsibility to the public not only to avail themselves of their lawful rights in a legal way, but also to endeavor to uphold all laws and to avoid the destruction of property, disorderly conduct, personal assaults, breach of the peace, violence and fraud. When unions not only fail to live up to that responsibility but deliberately, wilfully and with full knowledge that their acts are illegal, advise and encourage the commission of acts which are in violation of law and result in disorderly conduct and breach of the peace, they are no longer entitled to the benefits of special statutes enacted to protect them in the enjoyment of their conceded right of peaceful picketing.' "

In American Engineering Co. v. International Moulders Union Local No. 15 et al., 25 Dist. R. 564, 566, it was held:

"A hostile or threatening crowd does not need to resort to actual violence to be guilty of unlawful intimidation, although professing the intention and trying to

maintain an outward appearance of lawfulness, if they carry out their purposes by violent and threatening conduct . . .": Murdoch, Kerr & Co. v. Walker et al., 152 Pa. 595.

In Alliance Auto Service, Inc., v. Cohen et al., 341 Pa. 283, Mr. Justice Stern makes clear the distinction of that class of cases where the courts of equity may or may not issue a restraining order. In those cases concerning disputes between employer and employe as defined by the act, where the strike as conducted is free of misrepresentation, fraud, duress, violence, breach of the peace or threat thereof, the court may not issue an injunction. But in those cases where the strike is conducted with misrepresentation, fraud, duress, violence, breach of the peace or threat thereof, the courts of equity have jurisdiction to restrain such acts by injunction. That is the test, even under the provisions of the said Act of 1937.

In Yale Knitting Mills, Inc., v. Knitgoods Workers Union, etc., 334 Pa. 23, it is stated (p. 25) :

"Defendants contend that the acts which plaintiff seeks to have enjoined, occurred during a 'labor dispute' as defined by the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, and that there has not been a compliance with the conditions and restrictions imposed by that act in the issuance of this restraining order."

The bill in equity complained that the union and the officials of the union engaged in unlawful acts of interference with the business. After a hearing, the court below issued a preliminary injunction restraining defendants from unlawful picketing of the plant and place of business of the complainant; from intimidating, coercing, threatening, assaulting or injuring any of complainant's employes; from following, annoying or hurling offensive or opprobrious epithets at any of such employes; from congregating about complainant's plant and preventing the employes from entering or

leaving therefrom, etc. Mr. Justice Barnes (on p. 25) said:

"A review of the evidence presented in the court below upon plaintiff's motion for a preliminary injunction convinces us that there was reasonable ground afforded for the decree to restrain preliminarily the commission of such acts of violence that were destroying plaintiff's business, and depriving its employes of their right to work."

Assuming the lawfulness of picketing, it is conceded practically everywhere that it is permissible to maintain a reasonable number of pickets about the plant of the employer. But the mere number of pickets may in itself constitute intimidation although no acts of violence are committed. Where a large number of pickets are so disposed as to constitute a show of force or any act of intimidation, an injunction to restrain such acts should and will be granted. In this case the evidence shows that by the great group, congregating around and about the gates of plaintiff's plant, there constitutes a show of force which intimidates and coerces the employes of plaintiff and its officers, agents and representatives.

### Conclusions of law

1. Mass picketing by defendants is illegal.

2. The intimidation and coercion of the officers, employes of plaintiff and other persons having lawful business upon the premises of plaintiff is contrary to law.

3. The courts of equity of the Commonwealth of Pennsylvania have jurisdiction to restrain mass picketing as well as coercion and intimidation by threats and violence or in any other way interfering with any of the employes, officers or agents of the SKF Industries, Inc., at their plants in Philadelpha.

4. Defendants and each of them are committing an unlawful act when they interfere with, hinder or

obstruct the officers, employes or duly authorized agents of plaintiff, in free, uninterrupted and unhindered access to its offices, owned or occupied by it in the City of Philadelphia, Commonwealth of Pennsylvania.

5. It is illegal for defendants either singly or in combination with others, to collect, congregate, loiter, or gather about said premises of plaintiff, the places of ingress or egress to and from said premises of plaintiff or any of the ways or approaches to the premises of plaintiff for the purpose of unlawfully intimidating any of plaintiff's employes, officers, agents or representatives or other persons transacting business with said plaintiff, or for the purpose of preventing free access to the property owned or occupied by plaintiff in the City of Philadelphia, Commonwealth of Pennsylvania, by any of its employes, officers, agents or representatives or other persons having business to do with said plaintiff.

6. The court of equity has jurisdiction in this case to restrain the actions above enumerated.

### Order

And now, to wit, November 29, 1945, plaintiff, having filed its verified bill of complaint against defendants and after hearing by the court upon plaintiff's rule to show cause why the relief prayed for should not be granted, and it appearing to the court that immediate and irreparable injury and damage will result to plaintiff before hearing can be had upon the merits of plaintiff's bill; that such injury and damage would consist of a complete stoppage of or interference with all plaintiff's business operations and in destruction and irreparable injury to plaintiff's plants, machinery and equipment, resulting in a loss to plaintiff; and that because of the imminence of said injury and damage, any order which the court may later issue will be ineffective to prevent the infliction of such injury and

damage upon plaintiff, it is ordered that defendants individually and as representatives or members of defendant local union, their servants, agents, employes and/or any other person acting on behalf of them or any of them, or in concert with them or under their control, be and they are hereby restrained and enjoined from aiding, abetting, encouraging, ordering or assisting in any way any work stoppage at plaintiff's plants by means of violence, and from any interference by means of mass picketing at plant no. 1, Front Street and Erie Avenue; plant no. 2, Tulip and Kennedy Streets, and the Atlas Plant, Fourth Street and Glenwood Avenue, with the operation of plaintiff's office and factories, and from coercing or intimidating by threats and violence, plaintiff's employes and other persons having lawful business upon plaintiff's premises from entering and leaving plaintiff's premises; from congregating in great numbers or in combination with others, loitering or gathering in or about the said premises of plaintiff, places of egress and ingress or its approaches to the premises for the purpose of unlawfully intimidating any of plaintiff's employes, its officers, agents or representatives or other persons having business with said plaintiff; that no more than 10 persons remain at any one time in front of or near the entrances to plaintiff's plants; that such persons be in motion and spaced 10 feet apart in a single line so as not to block any of said entrances for the ingress and egress, on foot or by automobile, of any person desiring to enter or leave any of said plants; and that any acts of defendants or any persons acting on their behalf at any place in the City of Philadelphia, for the purpose of preventing, by threats or otherwise, anyone from going to or coming from any of said plants are hereby restrained and enjoined; provided that plaintiff first give security in the sum of $5,000, in the form and manner required by law.

The injunction to continue 10 days sec. reg. and the motion for its continuance thereafter will be heard by the court on December 10, 1945, at 10 o'clock a.m., in Room K City Hall, Philadelphia.