[Civ. No. 13587. Second Dist., Div. Three. Aug. 20, 1942.]

GEORGE M. PEZOLD, Respondent, v. AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA (an Unincorporated Association) et al., Appellants.

Clarence E. Todd and Albert A. Kidder, Jr., for Appellants.

Lewis & Taylor, Neville R. Lewis, Milton A. Taylor and John J. Varni for Respondent.

BISHOP, J. pro tem.—In this action brought to enjoin the defendants from picketing plaintiff's market, the complaint, proof and findings of fact each made out a case entitling the plaintiff to injunctive relief. The judgment which was entered, however, granted relief beyond that authorized.

The complaint states a cause of action. Much of it is taken up with a recital of facts which, summed up, establish that plaintiff's twenty-four employees were entirely satisfied with their hours of labor, wages and working conditions, were united in a union of their own, not affiliated with any other, and that no labor dispute existed between them and the plaintiff. The defendants were labor organizations and officials, it is alleged, who had conspired to compel plaintiff's employees

to join their ranks. To accomplish their object the defendants picketed plaintiff's premises, using banners and the spoken word in an endeavor to convince those who were expected to deliver produce to the plaintiff's market that they should not do so; to dissuade would-be purchasers from buying; and to persuade plaintiff's employees that it was to their interest to join the defendants' unions.

These facts, without others, and unaffected by any legislation that "has undertaken to balance the effort of the employer to carry on his business free from the interference of others against the effort of labor to further its economic self-interest" (*Carpenter & Joiners Union* v. *Ritter's Cafe*, (1942) —— U. S. —— [86 L. Ed. ——, —— S. Ct. ——]), do not constitute a cause of action. ■ Picketing may be lawful, although no labor dispute between the employer and employee exists (*Magill Bros.* v. *Building Service etc. Union*, (1942) 20 Cal. (2d) 506 [127 P. (2d) 542], and cases cited, p. 508) and though the object of the picketing be to unionize a place of business in which none of the pickets are employed. (*American Federation of Labor* v. *Swing*, (1941) 312 U. S. 321 [85 L. Ed. 855, 61 S. Ct. 568]; *Magill Bros.* v. *Building Service etc. Union, supra,* p. 508.)

■ The complaint contains further averments, however. It is there alleged and it was revealed by the evidence and found by the trial court that those engaged in picket duty did not limit their activities to making known their grievances against the plaintiff, nor confine to appeals to reason their endeavors to persuade would-be customers not to deal with plaintiff. Among other things they stated to them: "Don't go in there lady, there might be trouble"; "Better stay out of there or you will get hurt"; "There she goes, we'll get her next"; "Don't go into that parking lot mister, if you do you won't get back out." Concerning the fact that the picketing was so conducted as to block the entrance to plaintiff's market the complaint only alleges that the pickets varied in number from two to thirty-seven, but from the evidence it appears not only that the number of pickets varied from two to thirty-seven, but that on the first day they parked ten to twelve automobiles, with banners, occupying almost all the space in front of plaintiff's market, and then twenty-five pickets, carrying banners some two by four feet in size, paraded on the sidewalk back and forth across the sixty-foot front of the market. On the occasion when the picket line reached its

peak and thirty-seven were involved, they were spaced a foot apart. The picketing continued for a week, when it ceased in deference to a temporary restraining order. After Sunday and Labor Day each day began with only two or three pickets on duty, but the number increased as the day wore on until in the evenings there would be "quite a parade"; one evening there were seventeen to nineteen on hand. Of these numbers, it would seem, two were always on the parking lot reserved for plaintiff's customers, next door to his market.

█ From these facts it appears that the picketing was beyond that now established as lawful. We recognize the fact that inherent in the labor practice of picketing there usually is, as in the case under review there undoubtedly was, an exercise of the constitutionally protected right freely to communicate ideas. But it would be stubbornly refusing to admit the obvious not to see in the activities of picketing on many occasions more than the mere expression of ideas. As stated by Mr. Justice Douglas, in an opinion concurred in by two of his associates in *Bakery & Pastry Drivers etc.* v. *Wohl,* (1942) —— U. S. —— [86 L. Ed. ——, —— S. Ct. ——], and quoted by our Supreme Court in *Magill Bros.* v. *Bldg. Service etc. Union, supra,* 20 Cal. (2d) 506, 510: " 'Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive regulation.' " In *Magill Bros.* v. *Building Service etc. Union,* just cited, it was held, accordingly, that "There can be no doubt that untruthful picketing is unlawful picketing" and that an injunction, limited to a correction of the unlawful aspect of the picketing, was proper. Equally without doubt is it that picketing, wherein the persuasion brought to bear contains a threat of physical violence, is unlawful, and that the use of words and an aggregation of pickets which reasonably induce fear of physical molestation may properly be enjoined. (*Lisse* v. *Local Union No. 31,* (1935) 2 Cal. (2d) 312, 317 [41 P. (2d) 314, 316] ; *McKay* v. *Retail Auto. etc. Union,* (1940) 16 Cal. (2d) 311, 320 [106 P. (2d) 373, 378] ; *Steiner* v. *Long Beach Local, etc. Union,* (1942) 19 Cal. (2d) 676, 682 [123 P. (2d) 20, 24, 25].)

█ The injunction issued in this case, however, was too

broad. After its preliminary recitals the judgment that was entered continues: "NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the defendants, and each of them, their agents, servants, representatives and employes be and they are hereby permanently enjoined and restrained from doing or attempting to do any of the following acts:

"(a) Maintaining picket lines which interfere with free ingress and egress to and from that business and the adjoining parking lot at 847 Main Street, Santa Paula, California;

"(b) Maintining pickets bearing banners containing false, libelous, and misleading statements and/or statements calculated to convey a threat of physical violence;

"(c) And enjoining any picket or representative while picketing from making any statements false, libelous and misleading, and/or calculated to convey a threat of physical violence;

"(d) Stationing or placing in front of or in the vicinity of plaintiff's business, pickets or representatives for the purpose of influencing or inducing or attempting to influence or induce any person to refrain from entering plaintiff's business, or for the purpose of influencing or inducing or attempting to influence or induce any person to refrain from purchasing any goods, wares, merchandise or other articles sold by plaintiff, or for the purpose of influencing or inducing or attempting to influence or induce any of plaintiff's employes to refrain from continuing in plaintiff's service, or for the purpose of influencing or inducing or attempting to influence or induce such employes to become members of the defendant unincorporated associations or their locals, or for the purpose of influencing or inducing any person, firm or corporation or attempting to influence or induce any such person, firm or corporation to refrain from selling or delivering merchandise and commodities to plaintiff, or to refrain from having business or contractual dealings with plaintiff, or for the purpose of influencing or inducing or attempting to influence or induce truck drivers or other employes of plaintiff or corporations selling and delivering merchandise and commodities to plaintiff to refrain from delivering to plaintiff's business merchandise and commodities ordered or intended for delivery thereto by any means

calculated to intimidate or create fear in said person or persons of physical violence.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT plaintiff recover the sum of $1,020.55 from the defendants, and each of them, by way of damages to plaintiff's business and the good will thereof."

The facts of this case do not make out an aggravated or persistent case of mass picketing nor of any physical violence. Those who desired to enter plaintiff's market were not required to force their way through a picket chain, save possibly on one occasion. At the worst at all other times they had but to wait the passing of the picket line at a given point and enter the market before it returned to that point. There was no picketing in defiance of a court order. Nor was there even a technical battery committed by any of the pickets upon any person, whether customer, deliveryman or employee. True, in the complaint it was alleged and the trial court found it to be a fact that a threat "to get" plaintiff's meat department manager was made, followed by the placing of pickets at his residence, but there is nothing in the evidence to bear this out. It was further found that certain threats of physical violence were voiced against plaintiff's employees, as the complaint alleged, but again the evidence fails to give the finding any support. Nor does the evidence justify a further finding that one of plaintiff's employees, while obtaining merchandise for plaintiff at a place remote from the market, was physically interfered with, although it does appear that he was called a name that should always be accompanied by a smile, that he was termed a scab, and that on the employee's return trip one of those who had been on the picket line drove his car back and forth across the road ahead of the employee's vehicle.

The picture, then, while not that of a peaceful, lawful, picket line, engaging only in practices protected by the state and federal Constitutions, is yet not one in which acts of violence have so stamped themselves upon the scene that for a time at least even peaceful picketing will reflect the events of the past and appear to threaten the personal safety of customers or others, with the result that all picketing must be enjoined in order to afford the plaintiff adequate protection; and the trial court did not find this to be so as a fact. That is to say, those facts found by the trial court that are supported by the evidence do not bring this case within the

principles applied in *Steiner* v. *Long Beach Local etc. Union,* (1942) 19 Cal. (2d) 676 [123 P. (2d) 20], and *Milk Wagon Drivers Union* v. *Meadowmoor Dairies,* (1941) 312 U. S. 287 [85 L. Ed. 836, 61 S. Ct. 552, 132 A. L. R. 1200]. The trial court erred, therefore, in arriving at the conclusion of law "That in this case . . . defendants have forfeited their privilege of peaceful picketing," and in expressing the further conclusion that the defendants should be permanently enjoined from "having pickets in front of or in the vicinity of plaintiff's business . . ."

The judgment is too broad, therefore, in that it enjoins acts which are lawful, and it is also too broad in that it enjoins acts neither done nor threatened to be done. Subdivision (a), quoted above, is couched in somewhat different language but is the same in scope as the provision of the Yuba County ordinance, considered in *In Re Bell,* (1942) 19 Cal. (2d) 488 [122 P. (2d) 22], which in terms made it unlawful "for any person to loiter, stand, or sit upon any public highway . . . sidewalk or cross-walk so as to in any manner hinder or obstruct the free passage . . . of persons or vehicles. . . ." This language, the Supreme Court stated, (p. 497) "encompasses conduct that is well within the bounds of peaceful picketing sanctioned by the guarantees of due process of law. Thus a picket may be peaceful even though he loiters, stands, or sits upon a public highway, alley, sidewalk, or crosswalk, and thereby constitutes to some extent an obstruction to the free passage of persons and vehicles or an annoyance to persons who do not approve of his presence."

A picket line, no matter how small and peaceful, if on the sidewalk in front of plaintiff's market, would to some extent obstruct the free passage of persons, that is to say, interfere with their free ingress and egress to and from plaintiff's market. The foreordained disapproval of the sweeping language of the ordinance, expressed in *In re Bell, supra,* (p. 497) applies with equal force to the sweeping language of the judgment. The defendants have a right to use the public sidewalk in front of plaintiff's market for the purpose of spreading their propaganda. Plaintiff has a right to have his customers use the sidewalk for the purpose of entering and leaving his market. Neither right is exclusive; each may, fortunately, be exercised without a denial of the other, although each may interfere with the other. Defendants' use of the sidewalk may not be prohibited, but there may be

a limitation placed upon the number using it and the manner of use, so that there is neither intimidation nor undue interference with its use by plaintiff's customers. Subdivision (a) of the judgment, however, constitutes a greater restriction than the facts found warrant.

The judgment further enjoins the doing of acts which the defendants have neither done nor threatened to do, so far as appears from the evidence, a field in which a decree in equity should not trespass. (*Cameron* v. *Feather River Forest Homes,* (1934) 139 Cal. App. 373, 378 [33 P. (2d) 884]; *Chrisman* v. *Culinary Workers' Local Union,* (1941) 46 Cal. App. (2d) 129, 134 [115 P. (2d) 553]; *Hitchman Coal & C. Co.* v. *Mitchell,* (1917) 245 U. S. 229, 262 [62 L. Ed. 260, 281, 38 S. Ct. 65]; 32 C. J. 379.) We have not heretofore had occasion to note the statements appearing on the banners which the pickets carried, in addition to wearing "A. F. of L." arm bands; they were these: "Some merchants take 24 hours to do 8 hours work. How slow are you?" "We have a list of fair merchants. Is your name there?" "Sunday should be a day of rest. Do you enjoy yours?" "I don't work on Sundays and Holidays. Why do you?" "We are carrying on what Lincoln started. Free the slaves." "My baby has milk today. I arranged for it on Saturday." "Are your competitors reasonable. Some of ours are." "All Union Markets are closed Sunday and Monday. Are Yours?" "All fair merchants advertize that they will close Sunday and Monday." "We ask that all labor be given one holiday per year." "Is that fair?" "S. P. Mkt. the only Mkt. in the County working its help today." "I don't work on Sundays or holidays. Why do you?" "Some employers are men. Others are exploiters. Which are you?" "This is the only Mkt. open today in this County. There is one small grocery store open here in Santa Paula. Please locate same." "We are acquainted with our families. Are you?" "We belong to the Union. Why can't you?" "Some work from 12 to ? We work from 8 a. m. to 6 p. m." Nowhere in the findings is it found as a fact that any one of these statements was false, libelous or misleading, and they do not appear to be as a matter of law. Indeed in the complaint it is not claimed that any of them were, although it is alleged that the pickets were "so stationed . . . so as to cause prospective customers and the general public wrongfully to believe that an actual labor dispute exists" and, further, that

plaintiff lost many customers because of the signs causing them to believe that a strike existed. ▮ As pointed out in *C. S. Smith Met. Market Co.* v. *Lyons,* (1940) 16 Cal. (2d) 389, 394 [106 P. (2d) 414], the presence of pickets is not a sound ground for the inference that a strike has been called or that a labor dispute between employer and employee exists, and the making of statements such as those noted should not be characterized as fraudulent because some persons jumped to the wrong conclusion. ▮ Nor can it be argued that any of these banners carried a threat of physical violence. There was no basis, therefore, for the provisions of subdivision (b) of the judgment enjoining the defendants from maintaining pickets bearing banners containing false, libelous and misleading statements or banners calculated to convey a threat of physical violence.

We are at a loss just how to interpret subdivision (d) of the judgment, but any of the possible interpretations requires us to disapprove it as a part of the judgment. This portion of the judgment would be entirely in harmony with the conclusion of law that the defendants had "forfeited their privilege of peaceful picketing," but for the words with which it ends: "by any means calculated to intimidate or create fear in said person or persons of physical violence." Insofar as the words of this phrase apply, the injunction is not against all picketing, but only against that which is unlawful because made under threats of physical molestation. If we look only to the punctuation we conclude that the phrase applies only to stationing pickets to influence "truck drivers, or other employees of plaintiff or corporations," leaving the injunction one against even peaceful picketing as to all others mentioned. This interpretation, however, is unsatisfactory in that "truck drivers" and "other employees" would seem to be unlikely antecedents of "said person or persons." But if the qualifying words at the end of the subdivision apply only to the prior provisions where a "person" or "persons" are mentioned, again we have left provisions which would enjoin perfectly lawful picketing. If we take the only remaining interpretation of this uncertain subdivision of the judgment and determine that the concluding phrase applies to all the provisions immediately preceding it, whether they refer to a "person" or to "employees," "truck drivers," "firms" or "corporation," then again we have the judgment forbidding the defendants from doing

that which they have neither done nor threatened to do, so far as the evidence discloses. For example, there is no proof that any picket endeavored, by means calculated to intimidate or create fear of physical violence, to influence any of plaintiff's employees to quit his service.

We have concluded that the judgment should be reversed rather than modified at our hands because of a combination of circumstances. In some particulars, as we have noted, the findings are not supported by the evidence and in an unknown part the damages awarded seem to be dependent upon the facts found but not proved to exist. The evidence, moreover, was acquired in large part as a result of a stipulation that "the statements contained in the affidavits may be deemed to be testified to here as if they were in court testifying." The affidavits referred to were those filed in support of plaintiff's application for a temporary restraining order. Without holding that evidence so obtained may not properly be used, we find worthy of reference the opinion of it expressed by Judge Amidon in *Great Northern Ry. Co.* v. *Brosseau*, (1923) 286 Fed. 414, 416: "The experience both upon the hearings as to whether a preliminary injunction should issue, and upon the contempt proceedings, have convinced me that affidavits are an untrustworthy guide for judicial action. That is the case in all legal proceedings, but it is peculiarly true of litigation growing out of a strike, where feelings on both sides are necessarily wrought up, and the desire for victory is likely to obscure nice moral questions and poison the minds of men by prejudice. . . . Experience, as I have stated, has caused me to be so incredulous of affidavits that I have required in all important matters the presence of the chief witnesses upon each side at the hearing." Lastly, we note that these affidavits were filed in September, 1937; the trial at which they were adopted as testimony was held April, 1938; the findings of fact and judgment were filed February, 1941. That a judgment may be entered in which the present equities of both parties may be safeguarded we deem it advisable that the judgment now entered be reversed, without limitation, so that a new trial may be had after the filing of amended or supplemental pleadings, if that be the desire of the parties.

The judgment, therefore, is reversed.

Schauer, P. J., and Wood (Parker), J., concurred.