[L.A. No. 31025. Dec. 14, 1979.]

KAPLAN'S FRUIT & PRODUCE COMPANY, INC.,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

**COUNSEL**

Hill, Farrer & Burrill, Stanley E. Tobin and James G. Johnson for Petitioner.

No appearance for Respondent.

Jerome Cohen, Sanford N. Nathan, Tom Dalzell, Deborah Wiener Peyton, W. Daniel Boone, Ellen Greenstone, Glenn Rothner, E. Michael Heumann II, Linton Joaquin, Kirsten L. Zerger, Dianna Lyons and George C. Lazar for Real Party in Interest.

Dressler, Stoll & Jacobs, Donald G. Dressler, Charley M. Stoll, Marion I. Quesenbery, Littler, Mendelson, Fastiff & Tichy, Jordan L. Bloom,

Randolph C. Roeder, Marvin J. Brenner and Ellen Lake as Amici Curiae on behalf of Real Party in Interest.

OPINION

**TOBRINER, Acting C. J.**—In an agricultural labor dispute, petitioner Kaplan's Fruit & Produce Company, Inc. (Kaplan's) sought a preliminary injunction to restrain pickets of real party in interest United Farm Workers of America (Union) from obstructing ingress and egress to Kaplan's wholesale facility in Los Angeles.[1] The superior court found "mass picketing which interferes with ingress and egress," but ruled that lacking evidence of violence or threat of violence it had no jurisdiction to grant injunctive relief. Kaplan's filed the instant petition for mandate to compel the superior court to issue a preliminary injunction.

Prior decisions of the United States Supreme Court and of the California courts establish the jurisdiction of local courts to enjoin interference with access in a suit by a private litigant. The Union maintains, however, that two recent California statutes, the Agricultural Labor Relations Acts (ALRA) (Lab. Code, § 1140 et seq.) and the Moscone Act (Code Civ. Proc., § 527.3) divest the superior court of such jurisdiction. We explain our reasons for rejecting that contention.

■ Since the National Labor Relations Act (29 U.S.C. § 151 et seq.), served as the model for the ALRA, decisions interpreting the national act are persuasive in construing the California law. ■ Those decisions hold that the exclusive jurisdiction of the NLRB to adjudicate charges of unfair labor practices does not preempt the power of the local court to enjoin obstructions to access; they indicate that, because blocking of customer access does not in itself constitute an unfair labor practice, an injunction restraining such conduct presents no significant risk of an impairment of board adjudication. Following the federal precedents, we construe the ALRA to permit superior courts to enjoin obstruction to access in private suits for injunctive relief.

■ In the Moscone Act, Code of Civil Procedure section 527.3, subdivision (b), bars injunctions against "peaceful picketing." Constru-

---

[1] We use the term "obstruction of access" to refer to obstruction of both ingress and egress.

ing that language in light of existing law as required by subdivision (a) of the act, and in accord with subdivision (e)'s declaration of legislative intent not to permit unlawful obstruction of ingress and egress, we conclude that picketing which obstructs access is not "peaceful" picketing protected by the statute. Accordingly, we conclude that the act does not divest the superior court of jurisdiction to enjoin such picketing.

We decline, however, to mandate the superior court to issue a preliminary injunction as requested by Kaplan's. The record suggests that the court, because it believed it lacked jurisdiction to issue an injunction, did not carefully weigh the evidence and decide whether the facts required such relief. We therefore mandate the superior court to vacate its order denying a preliminary injunction, permitting it to reconsider, in light of this opinion, whether to grant the relief requested.

### 1. *Proceedings before the courts and the ALRB.*

The Union won a representation election at Kaplan's Porterville farm in 1975 and was certified as collective bargaining agent by the ALRB in January of 1976. Two years of bargaining failed to produce a collective bargaining agreement. In November 1977, the Union began picketing at Kaplan's wholesale outlet in Los Angeles.

On December 9, 1977, Kaplan's petitioned the superior court for injunctive relief and obtained a temporary restraining order. On December 20, 1977, the superior court heard Kaplan's request for a preliminary injunction. At the outset of the hearing, the court expressed the opinion that our decision in the first *Sears* case (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893 [132 Cal.Rptr. 443, 553 P.2d 603], revd. (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745]) might deprive it of jurisdiction to enjoin picketing absent evidence of violence. Argument before the superior court centered upon this issue, and neither party presented evidence, apart from affidavits filed previously, to show what occurred during the picketing. At the close of the hearing the court denied the request for injunctive relief, finding that there was "mass picketing which interferes with ingress and egress from petitioner's property but that there is insufficient evidence of violence or threat of violence to support a preliminary injunction."

When it filed its complaint in the superior court, Kaplan's also presented to the ALRB a charge of unfair labor practice. On February 17,

1978, the regional counsel for ALRB declined to issue a complaint, stating that the board's investigation revealed that "the UFW [Union] did *not* conduct mass picketing or block access to the Kaplan stand." Kaplan's appealed to the general counsel, who responded that "Investigation revealed that the picketing in front of charging party's premises was primary activity and that the manner in which it was conducted did not violate any provision of the ALRA."

Kaplan's then sought mandate from the Court of Appeal to compel the superior court to grant the preliminary injunction. The Court of Appeal issued an alternative writ, thereby determining that Kaplan's appellate remedy was inadequate.[2] The Court of Appeal subsequently issued a peremptory writ as prayed; we granted a petition for hearing.

Although its pleadings below speak in broader terms, Kaplan's answer to the petition for hearing in this court and its presentation at oral argument demonstrate that it does not seek to enjoin mass picketing apart from its effect in obstructing access to Kaplan's premises. We therefore limit our opinion to the question of superior court jurisdiction to enjoin obstruction of access.

2. ■■■ *The Agricultural Labor Relations Act does not divest the superior court of jurisdiction to enjoin obstruction to access in a private action for injunctive relief.*

Labor Code section 1160.9 provides expressly that the procedures set forth in the ALRA "shall be the exclusive method of redressing unfair labor practices." Despite the absence from the NLRA of words conferring "exclusive jurisdiction" on the federal board, "The United States Supreme Court has interpreted the NLRA as providing the exclusive means of redressing unfair labor practices." (*Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 558 [147 Cal.Rptr. 165, 580 P.2d 665].) "Thus," we concluded, "section 1160.9 simply constitutes a codification of existing federal law." (*Id.*)

■■ Accordingly, in defining the scope of preemption under section 1160.9, we adhere to the Legislature's directive in Labor Code section 1148 to "follow applicable precedents of the National Labor Relations Act, as amended." As explained in *People* v. *Medrano* (1978) 78 Cal.

---

[2]See 5 Witkin, California Procedure (2d ed. 1971) page 3870 and cases there cited.

App.3d 198, 205 [144 Cal.Rptr. 217]: "In designating the NLRA precedents as guideposts, the ALRA apparently incorporates into California law the general features of the [federal] preemption doctrine." We therefore look to cases interpreting the NLRA as a guide to the determination of whether the ALRA preempts the power of superior courts to enjoin obstructions to access in a private suit.[3]

■ The decisions of the United States Supreme Court interpreting the federal act establish the general principle that the NLRB has exclusive jurisdiction over conduct which arguably involves practices either *protected* or *prohibited* under the NLRA. (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773].) Those decisions recognize, however, as an exception to the general rule of preemption, the power of local courts and agencies to adjudicate matters of particular local concern. (See *Auto Workers* v. *Wisconsin Board* (1956) 351 U.S. 266 [100 L.Ed. 1162, 76 S.Ct. 794] (violence); *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657] (libel); *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056] (infliction of emotional distress); *Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745] (trespass).) The decisions specifically acknowledge that local courts and agencies retain jurisdiction over private actions to enjoin obstructions to access. (See *Auto Workers* v. *Wisconsin Board, supra,* 351 U.S. 266, 274 [100 L.Ed. 1162, 1172-1173]; *Youngdahl* v. *Rainfair, Inc.* (1957) 355 U.S. 131 [2 L.Ed.2d 151, 78 S.Ct. 206].)

In *Auto Workers,* the Wisconsin Employment Relations Board enjoined the union from, among other matters, "Obstructing or interfering in any way with entrance to and egress from the premises of [the employer.]" (351 U.S. at pp. 269-270, fn. 3 [100 L.Ed. at p. 1170].) The

---

[3]The Union points out that Assembly Bill No. 3381, designed to amend section 1160.9 was introduced in the 1978 Legislature but was killed in committee. The bill would have amended section 1160.9 to read as follows:

"The procedures set forth in this chapter shall be the exclusive method of redressing unfair labor practices. However, neither this section, nor any other section of this part, shall preclude any person from directly seeking appropriate equitable relief from the courts of this state in situations involving mass picketing, blocking of entrances or exits, violence, and trespass."

The Union argues that the introduction and defeat of Assembly Bill No. 3381 indicates that the Legislature believes section 1160.9 does not permit private suits for equitable relief from blocking of access. We do not think that we can place much weight upon that argument. When a statute is uncertain or ambiguous, legislators favoring one construction may introduce bills embodying their views, but the failure of the Legislature to enact those bills does not prove that the Legislature rejects the proposed construction.

Supreme Court noted that the union's conduct, to the extent that it coerced employees, was an unfair labor practice, and that as a general rule states may not enjoin conduct which constitutes unfair labor practices. "But...this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence." (P. 274 [100 L.Ed. at p. 1172].) The court affirmed the injunction.[4]

*Youngdahl* v. *Rainfair, Inc., supra,* 355 U.S. 131, involved a state court injunction against intimidation, against "'obstructing...the free ingress and egress to and from [the employer's] property,'" and against all "'picketing or patrolling of the employer's premises.'" (355 U.S. at p. 132 [2 L.Ed.2d at p. 153].) ■ ■■■ The opinion declares the injunction barring all picketing overbroad, but carefully distinguishes and affirms the portion of the injunction barring intimidation and obstruction. (355 U.S. at p. 139 [2 L.Ed.2d at p. 157].)[5]

■ Following *Auto Workers* and *Youngdahl,* the Supreme Court in *San Diego Unions* v. *Garmon, supra,* 359 U.S. 236, explained that the issue of preemption must be broken into two parts: activities arguably protected by the NLRA, and activities arguably prohibited by that act. (359 U.S. at pp. 244-245 [3 L.Ed.2d at pp. 782-783].) Subsequent cases further clarify the proposition that the preemption issue as to both categories turns primarily on whether preemption is necessary to avoid

---

[4]The *Auto Workers* case affirmed an injunction issued by a state labor board. That fact, however, does not distinguish the case from the present proceeding. The Supreme Court ruled that Wisconsin had authority to provide for injunctions against violent or obstructive conduct; "that Wisconsin has chosen to entrust its power to a labor board is of no concern to this Court." (351 U.S. at p. 275.) The high court's subsequent decision in *Youngdahl* v. *Rainfair, Inc., supra,* 355 U.S. 131 [2 L.Ed.2d 151, 78 S.Ct. 206], affirmed an injunction by a trial court.

[5]California decisions construing the NLRA in turn acknowledge that federal law does not preempt local court jurisdiction to enjoin obstruction to access. In *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893, 903-904 [132 Cal.Rptr. 443, 553 P.2d 603] (revd. on other grounds, 436 U.S. 180 [53 L.Ed.2d 209, 98 S.Ct. 1745]) we stated that "despite the *Garmon* rule, power was reserved to the states to prevent mass picketing, violence, threats of violence and obstructions to ingress and egress which threatened public health and safety."

Apparently the superior court in the instant case construed the language quoted from the *Sears* opinion—in particular the phrase "mass picketing, violence, threats of violence and obstructions to ingress and egress" (17 Cal.3d 893, 903-904)—to mean absent violence or threats of violence the court lacked power to enjoin obstructions to access. That reading of *Sears* is plainly incorrect. The court need not find the presence of all the listed activities before it can enjoin any one of them. Indeed, the Union here concedes that federal decisions permit a state court to enjoin obstructions to access even in the absence of violence, just as it could obviously enjoin violence even without obstructions to access.

conflicting adjudications which would interfere with the regulatory activity of the administrative board. (See *Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. 180, 197 [56 L.Ed.2d 209, 225-226]; *Farmer* v. *Carpenters, supra,* 430 U.S. 290, 305 [51 L.Ed.2d 338, 353]; *Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274, 285 [29 L.Ed.2d 473, 482].)

We shall explain that cases involving alleged obstruction of customer access do not present a significant danger of conflicting adjudications, and thus do not require interposition of a rule of preemption depriving the superior courts of jurisdiction. Following the lead of the United States Supreme Court, we analyze this issue in two parts, first considering the doctrine of preemption as it relates to arguably *protected* activities, then the doctrine as it relates to arguably *prohibited* activities.

■ The doctrine of preemption of arguably protected activity, we observe, does not apply to the present case. Obstruction of access is not protected by the ALRA; a court injunction barring such acts, so long as it does not bar legitimate union conduct, invades no right of the union under the act.

The ALRB nevertheless contends that the present case does involve arguably protected activity. It points out that if the Union were in fact innocent of the charge of obstructing access, its picketing would be safeguarded by the ALRA. Since the parties dispute whether the Union did obstruct access, the ALRB reasoned that the case therefore "arguably" involves protected activity.

The ALRB's argument is unsound. Preemption arises only when the court is asked to regulate or enjoin conduct which arguably falls within the act's protection (*San Diego Unions* v. *Garmon, supra,* 359 U.S. 236, 244-245 [3 L.Ed.2d 775, 782-783]); here Kaplan's seeks only to enjoin obstruction of access, a clearly unprotected activity. The possibility that the Union is innocent of the charged conduct may be grounds for denying injunctive relief, but it does not invoke the preemptive jurisdiction of the board. Indeed, whenever any accusation is brought against a union, the charge may be groundless—the union may have engaged only in protected conduct—but to rest preemptive jurisdiction on that possibility would project the board's preemptive jurisdiction into all cases of charges against a union, rendering the arguably prohibited branch of the preemption doctrine superfluous.

We conclude that so long as the court's injunction does not restrain conduct which is arguably protected by the ALRA, it does not invade the ALRB's preemptive jurisdiction to adjudicate controversies concerning arguably protected activity.[6] The doctrine of preemption of "arguably protected" activity thus does not preclude superior court injunctions limited to restraints upon obstructions to access.

The doctrine of preemption of arguably *prohibited* conduct has greater relevance than that of arguably protected conduct, because obstruction to access under some circumstances does constitute an unfair labor practice. ▋ In such a case, the United States Supreme Court explains, the preemption issue turns on "whether the controversy presented to the state court is identical to...or different from...that which could have been...presented to the Labor Board. For it is only in the former situation that a...court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. 180, 197 [56 L.Ed.2d 209, 225-226].) ▋ As we shall explain, the issue which may be presented to the labor board in a case of obstruction of access is different from, and far narrower than, the issue which may be presented to the superior court.

▋ Picketing which obstructs access may be an unfair labor practice under Labor Code section 1154, subdivision (a) (1), to the extent that it restrains or coerces nonstriking employees in the exercise of their right to refrain from concerted activities guaranteed by section 1152.[7] (Cf. *N.L.R.B.* v. *United Mine Workers of America* (3d Cir. 1970) 429 F.2d 141, construing a similar federal provision.) ▋ In the present case, some evidence indicates that the Union's picket line interfered with nonstriking Kaplan's employees, but that obstruction is a minor facet of the controversy; the principal objective of the pickets, and of the alleged

---

[6]See generally the discussion of the arguably protected basis for federal preemption in the dissenting opinion of Justice Brennan in *Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. 180, 221-228 [56 L.Ed.2d 209, 240-245].

[7]Under section 1154, subdivision (a)(1), it is an unfair labor practice for a union or its agents "To restrain or coerce...Agricultural employees in the exercise of the rights guaranteed in Section 1152." Section 1152 provides that "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities ...."

interference to access, was to persuade prospective *customers* not to do business with Kaplan's.[8]

No provisions of the ALRA expressly declare obstruction of customers' access to be an unfair labor practice. The Union and the ALRB rest their claim that such conduct constitutes an unfair labor practice on section 1154, subdivision (d), which states in part that it is an unfair labor practice for a union "to threaten, coerce, or restrain any person where . . . an object thereof is . . . the following: . . . (2) Forcing or requiring any person to cease using, selling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person. . . ."[9] Read literally, this language is broad enough to ban acts which impede or prevent customers from doing business with a struck employer.

The United States Supreme Court, however, has authoritatively construed substantially identical language in section 8(b)(4) of the federal act (29 U.S.C. § 158(b)(4)) as inapplicable to primary picketing.[10] In

---

[8]The United States Supreme Court decisions cited earlier (*Auto Workers* v. *Wisconsin Board,* 351 U.S. 266, 274 [100 L.Ed. 1162, 1172, 76 S.Ct. 794]; *Youngdahl* v. *Rainfair, Inc.,* 355 U.S. 131, 139 [2 L.Ed.2d 151, 156-157, 78 S.Ct. 206]) permitted courts to enjoin obstructions to access even though such obstruction hindered employees as well as customers, and thus may have constituted an unfair labor practice.

[9]We quote the relevant language of section 1154: "It shall be an unfair labor practice for a labor organization or its agents . . .

"(d) To do either of the following: (i) To engage in, or to induce or encourage any individual employed by any person to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities, or to perform any services; or (ii) to threaten, coerce, or restrain any person; where in either case (i) or (ii) an object thereof is any of the following:

"(2) Forcing or requiring any person to cease using, selling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees. Nothing contained in this paragraph shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

[10]Section 8(b) of the NLRA states that "It shall be an unfair labor practice for a labor organization or its agents . . .

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . .

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer,

*National Labor Relations Board* v. *International Rice Milling Co.* (1951) 341 U.S. 665 [95 L.Ed. 1277, 71 S.Ct. 961], the court found no unfair labor practice although pickets obstructed access and threw stones to induce customers to refuse to pick up orders. The Congressional history of the act, the court noted, demonstrated that section 8(b)(4) was designed solely as a prohibition against secondary picketing. The court therefore concluded that "In the instant case the violence on the picket line is not material. . . . The substitution of violent coercion in place of peaceful persuasion would not in itself bring the complained-of conduct into conflict with § 8(b)(4)." (341 U.S. at p. 672 [95 L.Ed. at p. 1282].) Complaints of violence, the court states, must either be based on section 8(b)(1)(A) [coercion of employees], or "addressed. . . to local authorities." (*Ibid.*) In short, the court ruled that primary picketing, whether peaceful, obstructive, or violent, did not violate section 8(b)(4). (See generally 18G Kheel, Labor Law, § 36.01.) In 1959 Congress codified this holding by adding a proviso to section 8(b)(4) barring any construction of the section which would "make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

The relevant language of California Labor Code section 1154 almost parallels that of NLRA section 8(b)(4), including the amendment protecting primary picketing. ▇ In *Belridge Farms* v. *Agricultural Labor Relations Bd., supra,* 21 Cal.3d 551, 557, we observed that: "This court has long recognized the principle of statutory construction that '[W]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after the federal statutes. [Citations.]'"

Moreover, Labor Code section 1148 directs the ALRB to follow "applicable precedents of the National Labor Relations Act, as amended." California decisions have confirmed the importance of pertinent federal precedent to the construction of the California act. (See *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392,

---

or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; . . . "

404, fn. 5 [128 Cal.Rptr. 183, 546 P.2d 687]; *People v. Medrano, supra,* 78 Cal.App.3d 198, 205; *United Farm Workers v. Superior Court* (1977) 72 Cal.App.3d 268, 273 [140 Cal.Rptr. 87].) We therefore conclude that the California Legislature, when it adopted section 1154, subdivision (d), intended that provision to be construed in accordance with the federal precedents construing section 8(b)(4) of the NLRA.[11]

Under that construction, the blocking of access by union pickets constitutes an unfair labor practice under section 1154 only if it coerces employees in violation of subdivision (a)(1) of section 1154 or if it occurs in connection with an unlawful secondary boycott. Obstruction of access of customers by a primary picket line is not an unfair labor practice under the ALRA. Consequently, the only issues which the employer can present to the ALRB are much narrower than the issue he can bring before the superior court; and an injunction obtained at the behest of the ALRB barring only unfair labor practices would not provide the employer with the full relief to which he is entitled.

The Union argues that the foregoing analysis, based on decisions of the United States Supreme Court defining preemption under the NLRA, is inapposite. The Supreme Court decisions, it contends, recognized exceptions to the exclusive jurisdiction of the NLRB only out of respect for the sovereign rights of the states in a federal system. Such deference to principles of federalism, the Union concludes, can play no part in the present jurisdictional controversy between the ALRB, a state agency, and state superior courts.

Although concern for principles of federalism influenced the Supreme Court's initial decisions to permit exceptions to the preemptive reach of the NLRA (see *San Diego Unions v. Garmon, supra,* 359 U.S. 236, 247 [3 L.Ed.2d 775, 784]; *Auto Workers v. Wisconsin Board, supra,* 351

---

[11]The Union acknowledges that section 8(b)(4) of the NLRA prohibits only activity with an illegal object—a secondary boycott. It argues that "the analogous ALRA language necessarily regulates *both* conduct and objects, because the ALRA generally permits secondary activity. . . . Under the NLRA, that language need only reach the object, but the fact that the object is permitted under the ALRA requires that language to forbid misconduct in pursuit of an illegal object." (Italics added.) It concludes that section 1154, subdivision (d) of the ALRA, unlike section 8(b)(4) of the NLRA, prohibits obstructions to access in strikes with legal objectives.

Whatever the merits of the Union's argument as applied to a secondary boycott, the present case involves primary picketing. We cannot infer from the fact that the ALRA permits certain secondary picketing that the Legislature, when it adopted the language of the federal act, intended to depart from the established interpretation of that language and to create new unfair labor practices in the conduct of primary activity.

U.S. 266), the contours of the preemption doctrine have been largely shaped by a different consideration; the need to avoid conflicting decisions between the NLRB and the courts. (See pp. 69, 70, *ante* and cases there cited.) Consequently the courts have applied the preemption doctrine even in cases in which respect for state rights has no part, such as controversies between the NLRB and the federal courts. (See *Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, 286 [29 L.Ed.2d 473]; *Abrams* v. *Carrier Corporation* (2d Cir. 1970) 434 F.2d 1234.) Such principles by analogy may also serve to guide us in the resolution of controversies between California agencies and California courts.

The problem which faces federal courts in NLRA preemption cases is identical to that which faces California courts in ALRA preemption cases. Both federal and state courts seek to avoid conflicting adjudications which may interfere with the board's ability to carry out its statutory role, yet to permit court action when the board cannot provide a full and effective remedy. Over a period of more than 30 years, the federal courts have evolved guidelines to resolve such controversies. We believe that Labor Code section 1148 permits—indeed mandates—us to follow the federal precedents.

We summarize our reasoning on the subject of preemption. Federal decisions hold that the NLRA does not preempt local court jurisdiction to enjoin obstructions to access. Although those decisions rest in part upon principles of federalism, they rest also on the fact that, since obstruction of access is not necessarily an unfair labor practice, decisions of local courts do not present a substantial danger of interference with NLRB adjudication. The provisions of the ALRA largely parallel those of federal law; federal precedents serve to guide the construction of the California law. Following those precedents, we conclude that blockage of customer access is not in itself an unfair labor practice under the ALRA and hence that under the ALRA, as under the NLRA, local court decisions enjoining obstructions to access do not threaten significant interference with labor board adjudications. We therefore hold that the ALRA does not divest the superior courts of jurisdiction, in a suit by private parties, to enjoin obstructions to access.

3. ▉ *Code of Civil Procedure section 527.3 does not deprive the superior court of jurisdiction to enjoin obstructions to access.*

The Union contends that under the Moscone Act (Code Civ. Proc., § 527.3) the superior courts lack jurisdiction to enjoin obstructions to access.[12] In effect, the Union argues, the employer's only remedies for such obstruction lie in criminal prosecution or in a tort action for damages.

As we explained in our second *Sears* opinion: "The Moscone Act was a compromise measure. The original bill, drafted by union attorneys, clearly sought to limit the injunctive jurisdiction of the superior court. The act declared its purpose expressly: to prevent 'the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations.' (Code Civ. Proc., § 527.3, subd. (a).) The Legislature amended the bill to add provisions proposed by management supporters without, however, deleting any of the original provisions. In section 527.3 as finally enacted, the provisions added by amendment strike a discordant stance from those surviving from the original draft, thus creating difficult problems of statutory interpretation." (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 323 [158 Cal.Rptr. 370, 599 P.2d 676](fn. omitted).)

In the present case the problem is to construe and reconcile the language of subdivision (b) with the original draft and subdivision (e) which was added by amendment. Subdivision (b) provides as follows:

"The acts enumerated in this subdivision, whether performed singly or in concert, shall be legal, and no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction which, in specific or general terms, prohibits any person or persons, whether singly or in concert, from doing any of the following:

"(1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any

---

[12]Subdivision (c) of section 527.3 provides that the section shall not be construed to alter or supersede the provisions of the ALRA. Since the ALRA, in Labor Code section 1160.4, expressly authorizes the board to seek injunctive relief in the superior court against an unfair labor practice, the Moscone Act cannot be construed to deny the superior court the power to grant such relief on request by the ALRB. Consequently the Union's contention that the Moscone Act limits the equity jurisdiction of the superior courts must be read as limited to a contention that it limits the court's jurisdiction to grant relief at the behest of litigants other than the ALRB.

place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace.

"(2) Peaceful picketing or patrolling involving any labor dispute, whether engaged in singly or in numbers.

"(3) Assembling peaceably to do any of the acts specified in paragraphs (1) and (2) or to promote lawful interests."

Subpart (2) of this subdivision thus declares that "peaceful picketing," whether "singly or in numbers" is legal and hence not subject to injunction; subpart (1) similarly bars injunctions against publicizing a labor dispute by "patrolling" or "any other method not involving fraud, violence, or breach of the peace." The Union contends that the subdivision impliedly bars injunction against blocking of access unaccompanied by violence or threat of violence.[13]

Subdivision (e), however, expressly mentions obstructions to access; it provides that "It is not the intent of this section [section 527.3] to permit conduct that is unlawful including breach of the peace, disorderly conduct, *the unlawful blocking of access or egress to premises where a labor dispute exists,* or other similar unlawful activity." (Italics added.) Kaplan's maintains that the explicit reference to obstructions to access in subdivision (e) prevails over the more general language of subdivision (b), and preserves court jurisdiction to enjoin obstructions.

As in the second *Sears* opinion (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters, supra,* 25 Cal.3d 317, 325) we turn for guidance in our interpretation of the Moscone Act to the legislative directive that "the provision of subdivision (b) [of the act]...shall be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes." (Code Civ. Proc., § 527.3, subd. (a).)

"Existing law," in this case, clearly recognizes the power of superior courts to enjoin obstructions to access. (See *United Farm Workers of*

---

[13]The Union does not discuss whether picketing which obstructs access constitutes a "breach of the peace" within the meaning of section 527.3, subdivision (b). In *In re Bushman* (1970) 1 Cal.3d 767, 773 [83 Cal.Rptr. 375, 463 P.2d 727], we defined "breach of the peace" to mean "disruption of public order by acts that are themselves violent or that tend to incite others to violence." Since blocking of access will often provoke violence from the persons obstructed, such conduct may often fall within the foregoing definition, in which case injunctive relief is expressly permitted by subdivision (b). The fact that subdivision (e) separately lists "breach of the peace" and "blocking of access or egress," however, argues against any holding that obstruction to access necessarily constitutes a breach of the peace under subdivision (b).

*America* v. *Superior Court* (1976) 16 Cal.3d 499, 505 [128 Cal.Rptr. 209, 546 P.2d 713]; *United Farm Workers Organizing Committee* v. *Superior Court* (1971) 4 Cal.3d 556, 572, fn. 30 [94 Cal.Rptr. 263, 483 P.2d 1215]; *California Retail Liquor Dealers Institute* v. *United Farm Workers* (1976) 57 Cal.App.3d 606, 610-611 [129 Cal.Rptr. 407]; *Pezold* v. *Amalgamated etc. Workmen* (1942) 54 Cal.App.2d 120, 126-127 [128 P.2d 611]; *Chrisman* v. *Culinary Workers' Local* (1941) 46 Cal.App.2d 129, 133 [115 P.2d 553].) As the court explained in *Pezold* v. *Amalgamated etc. Workmen, supra,* 54 Cal.App.2d 120, 126-127, "The defendants have a right to use the public sidewalk in front of plaintiff's market for the purpose of spreading their propaganda. Plaintiff has a right to have his customers use the sidewalk for the purpose of entering and leaving his market. Neither right is exclusive; each may, fortunately, be exercised without a denial of the other .... Defendants' use of the sidewalk may not be prohibited, but there may be a limitation placed upon the number using it and the manner of use, so that there is neither intimidation nor undue interference with its use by plaintiff's customers."

The recent Court of Appeal decision in *International Molders etc. Union* v. *Superior Court* (1977) 70 Cal.App.3d 395 [138 Cal.Rptr. 794], found the prior authority persuasive in construing section 527.3. Upholding a temporary restraining order which barred use of more than two pickets within 20 feet of any entrance or exit, the court stated that "The law enunciated in section 527.3 does not in our view differ from the case law in this area .... Nothing in section 527.3, subdivision (b), prevents a court from placing reasonable restrictions on picketing where, as here, the absence of such restrictions has resulted in threats of violence and interference with access and with freedom of movement." (70 Cal.App.3d at pp. 402, 406.)

Interpreting subdivision (b) in light of the existing case law, we conclude that picketing which obstructs access, because of its tendency to lead to violence, is not the "peaceful picketing" immunized from injunction by the subdivision. So construed, subdivision (b) accords with subdivision (e) of the act; the act taken as a whole does not bar superior courts from enjoining obstructions to access.[14]

[14]We recognize that subdivision (a) of section 527.3 requires construction in accordance with existing law "with the purpose of avoiding any unnecessary judicial interference in labor disputes." Whether "judicial interference" by means of injunctive relief is "unnecessary" in a case involving blocking of access is a matter which turns on the facts of the case, and must be left to the discretion of the trial court.

The Union offers an alternative interpretation to reconcile subdivisions (b) and (e) of section 527.3. It proposes that subdivision (b) limits the equity jurisdiction of the superior court, divesting it of power to enjoin obstructions to access, while subdivision (e) by condemning as "unlawful" such obstructions preserves the possibility of redress through tort actions or criminal prosecutions. The Union's proposal compels a strained construction of subdivision (b). That subdivision states that the acts there enumerated—essentially peaceful picketing not involving fraud, violence, or breach of the peace—"shall be legal." The ordinary, common sense meaning of this declaration is that such acts are lawful. From that construction it follows that the obstruction of access, being unlawful both under prior law and subdivision (e), does not fall within the conduct protected by subdivision (b). Under the Union's interpretation, when the Legislature declared an act to be "legal," it did not mean that such acts were "lawful," but that they are subject to the jurisdiction of courts of common law instead of equity. We think it improbable that the Legislature intended to use the term "legal" in such a narrow, technical, and unusual fashion.

We doubt that the Legislature intended by enactment of section 527.3 to leave employers with an action for damages as their sole remedy against obstructions to access. ■ The prerequisite for injunctive relief against blocking of access rests upon a showing that in the absence of restraint the employer will suffer irreparable injury (see Code Civ. Proc., § 526, subd. 2; *E. H. Renzel Co.* v. *Warehousemen's Union* (1940) 16 Cal.2d 369, 373 [106 P.2d 1]) or, equivalently that the remedy in damages is inadequate (see Civ. Code, § 3422; Code Civ. Proc., § 526, subd. 4; *Burnett* v. *Whitesides* (1859) 13 Cal. 156). Thus under present law injunctions issue to restrain blocking of access only when the superior court finds an inadequacy of a damage remedy. To relegate the employer to his remedy at common law is, under such circumstances, to deny him adequate relief.

Clear statutory language, or a precise showing of legislative intent, might nevertheless compel the conclusion that the statute deprives courts of the power to enjoin obstructions to access. As we noted earlier, however, the only place at which section 527.3 expressly refers to obstructions to access is subdivision (e); that section declares that it is not the intent of the Legislature to permit unlawful blocking of access and egress. Subidivision (b), under which the Union claims immunity from injunction, refers merely to "peaceful picketing," a phrase which

can reasonably be construed to exclude blocking of access. Although legislative history records the compromise character of the enactment, it offers no support for the Union's assertion that subdivision (e) does not limit the scope of subdivision (b) but merely preserves an inadequate remedy at law. Accordingly, we conclude that section 527.3 does not deprive superior courts of jurisdiction in a proper case to enjoin obstruction of access.

## 4. *Disposition of the present proceeding.*

■■■ Because the superior court erroneously concluded that it lacked jurisdiction to enjoin blocking of access, we must issue a writ of mandate to direct the court to vacate that order. The superior court, however, also rendered a finding, unnecessary to its disposition of the case, that the Union had engaged in mass picketing which obstructed access. On the basis of that finding Kaplan's asks us to direct the superior court to issue a preliminary injunction.

The superior court's finding of blocking of access rested solely on the basis of conflicting affidavits. Neither party presented other evidence on the issue; the parties restricted their oral argument before the trial court to the question of the court's jurisdiction. In view of the court's conclusion that it lacked jurisdiction, it gratuitously and unnecessarily rendered its finding on the alleged blockage. As we noted earlier, an independent ALRB investigation by the regional counsel concluded that no obstruction of access occurred. The record before us thus creates a strong impression that the superior court, believing it lacked jurisdiction to enjoin blocking of access, did not engage in the process of weighing the evidence and considering the arguments in order to determine whether such alleged obstruction occurred.[15]

Finally, we emphasize the distinction between the peaceful picket line and the coercive one. The mass picket line that obstructs access to an employer's premises cannot be subsumed under the principles that apply to the peaceful picket line. The efficacy of the former relies upon the application of force; the latter, upon persuasion; the mantle of legality of the peaceful line does not cover the coercive line. ■■■ We there-

---

[15]The preamble to the Moscone Act observes that "Equity procedure that permits a complaining party to obtain sweeping injunctive relief...that issues after hearing based upon written affidavits alone and not wholly or in part upon examination, confrontation and cross-examination of witnesses in open court, is peculiarly subject to abuse in labor litigation...." (Stats. 1975, ch. 1156, §1, p. 2845.)

fore urge trial courts to bear in mind our cautioning word that "Given the presumptively protected status of peaceful picketing activities, courts should be cautious in entertaining actions to enjoin or restrain such conduct" (*United Farm Workers of America* v. *Superior Court, supra,* 16 Cal.3d 499, 505); injunctions should "be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order" (*id.,* at p. 504). Because temporary restraining orders and preliminary injunctions in labor disputes may often have the effect of determining and terminating the entire controversy (see *McKay* v. *Retail Auto. S. L. Union No. 1067* (1940) 16 Cal.2d 311, 330 [106 P.2d 373]; *United Farm Workers of America* v. *Superior Court,* (1975) 14 Cal.3d 902, 913 [122 Cal.Rptr. 877, 537 P.2d 1237]), "judicially imposed restraints...must be tailored with caution and precision, and be reserved for those cases in which the threat of harm seems clear and imminent" (*United Farm Workers of America* v. *Superior Court, supra,* 16 Cal.3d 499, 506.).

Let a peremptory writ of mandate issue directing respondent to vacate its order denying Kaplan's motion for preliminary injunction. Upon vacation of that order, and pursuant to the views expressed herein, the court shall determine whether to grant a preliminary injunction, and if it does so to fix its terms and provisions.

Mosk, J., Manuel, J., and Cobey, J.,* concurred.

Clark, J., and Richardson, J., concurred in the judgment.

NEWMAN, J., Concurring.—The words of the Moscone Act that I think encase the Legislature's intent are these (italics added): "(a) In order to promote the rights of workers to engage in concerted activities for the purpose of...picketing..., and to prevent the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations, *the equity jurisdiction of the courts in cases involving or growing out of a labor dispute shall be no broader than as set forth in subdivision (b) of this section,* and the provisions of subdivision (b) of this section shall be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes.

---

*Assigned by the Acting Chairperson of the Judicial Council.

"(b) The acts enumerated in this subdivision, whether performed singly or in concert, shall be legal, and *no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction which, in specific or general terms, prohibits any person or persons, whether singly or in concert, from doing any of the following:* (1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace. (2) Peaceful picketing or patrolling involving any labor dispute, whether engaged in singly or in numbers. (3) Assembling peaceably to do any of the acts specified in paragraphs (1) and (2) or to promote lawful interests. . . .

"(d) Nothing contained in this section shall be construed to alter the legal rights of public employees or their employers, nor shall this section alter the rights of parties to collective-bargaining agreements under the provisions of Section 1126 of the Labor Code.

"(e) It is not the intent of this section to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity."

Unfortunately, in effect the majority here rule that passage of the Moscone Act in 1975 had no significant impact on California labor law. That hardly comports with the act's origins and history. It was patterned after the Norris-LaGuardia Act, whose pertinent aims have briefly been summarized as follows: " . . . Congress was dealing only with the problem of the labor injunction. See H. R. Rep. No. 669, 72d Cong. 1st Sess. (1932) Ser. No. 9492; Sen. Rep. No. 163, 72d Cong. 1st Sess. (1932) Ser. No. 9487; (1932) 75 Cong. Rec. 5464, 5467; Frankfurter and Greene, [The Labor Injunction (1930)] at 215: 'But the immunity accorded is circumscribed; it is not immunity from legal as distinguished from equitable remedies,—hitherto unlawful conduct remains unlawful. . . .' 'The measure under discussion merely deals with the most insistent issues presented by the labor injunction as utilized by the federal courts.' *Ibid.* at 226; Frankfurter and Greene, *Congressional Power Over the Labor Injunction* (1931) 31 Col. L. Rev. 385, 408: ' . . . the bill only withdraws the remedy of injunction. Civil action for

damages and criminal prosecution remain available instruments. Illegal strikes are not made legal.' Norris, *Injunctions in Labor Disputes* (1932) 16 Marq. L. Rev. 151; *cf.* Frankfurter and Greene, . . . at 226, n. 61: '. . . one of the present writers, at the suggestion of the Senate Sub-committee on the Judiciary, collaborated with others . . . in drafting the bill . . . .' Moreover, section 3 of the Norris-LaGuardia Act deals with 'yellow dog' contracts. Here, Congress thought it necessary expressly to refer to 'legal,' as distinguished from 'equitable,' relief. *Cf.* (1932) 75 Cong. Rec. 4767." (Note, *Labor Disputes and the Sherman Act* (1941) 29 Cal.L.Rev. 399, 403, fn. 18(c).)

That, even as amended, the bill that became Code of Civil Procedure section 527.3 was comparably designed is evidenced by its subdivision (d): "Nothing contained in this section shall be construed to alter *the legal rights* of public employees or their employers, nor shall this section alter *the rights* of parties to collective-bargaining agreements under . . . Section 1126 of the Labor Code." (Italics added.) That first clause excludes equitable rights. The second, contrastingly, protects both equitable rights and legal rights. (Section 1126 of the Labor Code states, "Any collective bargaining agreement . . . shall be enforceable at law or in equity . . . .")

Subdivision (e) of section 527.3 is parallel: "It is not the intent of this section to permit conduct that is unlawful. . . ." By no means do any clauses of the Moscone Act "permit" breaches of the peace, disorderly conduct, the blocking of access or egress to premises where a labor dispute exists, or similar unlawful activity. Why not? Because by obvious implication the draftsmen carefully preserved traditional recourse to criminal prosecution and damages in tort.

These words in the majority opinion (at p. 78, *ante*) appear to me to lack perception: "The Union's proposal compels a strained construction of subdivision (b). That subdivision states that the acts there enumerated—essentially peaceful picketing not involving fraud, violence, or breach of the peace—'shall be legal.' The ordinary, common sense meaning of this declaration is that such acts are lawful. From that construction it follows that the obstruction of access, being unlawful both under prior law and subdivision (e), does not fall within the conduct protected by subdivision (b). Under the Union's interpretation, when the Legislature declared an act to be 'legal,' it did not mean that such acts were 'lawful,' but that they are subject to the jurisdiction of courts of common law instead of equity. We think it improbable that the Leg-

islature intended to use the term 'legal' in such a narrow, technical, and unusual fashion."

True, subdivision (b) does declare that certain conduct is "legal". Yet it also confirms that fraud, violence, and breach of the peace are *not legal.* Further, subdivision (e) adds that disorderly conduct, certain blockings of access or egress, and similar activities are *not legal.* Criminal prosecution and actions for damage caused by all those illegal activities are, therefore, appropriate. Because of differences in wording between subdivision (b) and subdivision (e), however, only breach of the peace, fraud, and violence may be enjoined.

The words in subdivision (b) that "no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction"—as well as related words in subdivision (a) and in the statute's preamble[1] —indicate that the aim that did survive in the Legislature, notwithstanding last-minute amendments to the bill,[2] indeed was to relegate the employer to (1) complaints to the police, and (2) his common law remedies—even when those recourses might, under the equity precedents, technically be regarded as "inadequate."

It is disappointing that the Supreme Court of California, after more than half a century and notwithstanding the recent, plausibly incompatible, California legislative history, now appends this decision to the

[1]Section 1 of Statutes 1975, chapter 1156, page 2845, provides: "In the interpretation and application of this act the public policy of this state is declared as follows:

"Equity procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon notice to and hearing of the responding party or parties, or that issues after hearing based upon written affidavits alone and not wholly or in part upon examination, confrontation and cross-examination of witnesses in open court, is peculiarly subject to abuse in labor litigation for each of the following reasons:

"(a) The status quo cannot be maintained, but is necessarily altered by the injunction.

"(b) The determination of issues of veracity and of probability of fact from the affidavits of the opposing parties which are contradictory and, under the circumstances, untrustworthy rather than from oral examination in open court, is subject to grave error.

"(c) The error in issuing the injunctive relief is usually irreparable to the opposing party.

"(d) The delay incident to the normal court of appellate procedure frequently makes ultimate correction of error in law or in fact unavailing in the particular case."

[2]For comment on "the final, hectic days of that legislative session'" and the likely impact on last-minute amendments see *People v. Tanner* (1979) 24 Cal.3d 514, 542 [156 Cal.Rptr. 450, 596 P.2d 328].

judicial history that Messrs. Frankfurter and Greene in 1930 assailed so graphically and devastatingly in their book The Labor Injunction. My opinion is that the court thus appears needlessly regressive. (Cf. Christ, *Is the Norris Act Constitutional?* (1932) 19 Va.L.Rev. 51; Shatz, *Picketing Injunctions in California*...(1977) 28 HastingsL.J. 801, 836: "It would be anomalous indeed to conclude that the legislature, after reciting a litany of complaints as to the present injunction practice, enacted a statute which codified the status quo. The broader 'union' interpretation receives some further support from what little legislative history there is." Also cf. *Wilson & Co. v. Birl* (3d Cir. 1939) 105 F.2d 948 and *Alliance Auto Service v. Cohen* (1941) 341 Pa. 283 [19 A.2d 152].)

I concur in the majority's disposition of this proceeding (part 4 of Justice Tobriner's opinion). I have stated my separate views, though, because I do not believe that the superior court has been correctly instructed regarding its proposed new proceeding.